### CORNEY *v.* CORNEY.

### Opinion delivered September 19, 1910.

1. JUDGMENT—WHEN NOT VACATED.—A decree of divorce will not be vacated at the defendant's instance as for "unavoidable casualty or misfortune" on account of the failure of her attorneys to take depositions where she did not furnish them money to take them, nor on account of their failure to ask the court to require the plaintiff to furnish her expense money or to ask the court to hear oral testimony, nor on account of the failure of her counsel to notify her of the day of trial. (Page 120.)

2. DIVORCE—VACATION OF DECREE—LACHES.—Where the defendant in a decree of divorce waited two years before taking steps to vacate the decree upon the ground of the fraud of her attorneys and until the plaintiff had married another woman, her application should be denied on account of laches. (Page 121.)

3.  SAME—COST OF APPEAL.—On appeal by a husband ·from an order va-
cating a decree of divorce from his wife, where the decree is re-
versed and the application to vacate the decree is dismissed, but the
wife is unable to pay the costs of the appeal, they will be adjudged
against the husband.  (Page 123.)

Appeal from Crawford Chancery Court, *J. V. Bourland,*
Chancellor; reversed.

*Robert L. Rogers* and *Will Akers,* for appellant.

*D. D. Terry,* for appellee.

McCULLOCH, C. J.  R. B. Corney instituted in the chancery
court of Crawford County, Arkansas, an action against his
wife, Mary F. Corney, for divorce, and on May 6, 1907, the
court entered a decree granting the divorce on the ground of
adultery.  Said defendant, Mary F. Corney, appeared in said
cause by her attorneys and filed an answer to the complaint,
and also an answer to the amended complaint, denying all
the allegations of misconduct on her part.  Numerous inter-
locutory orders were entered by the court during the pendency
of the cause, and the record recites the appearance of said de-
fendant by her counsel in all the proceedings.  The record of
the final decree recites that she appeared by counsel.

On May 8, 1907, said defendant appeared in court by coun-
sel (the same attorneys who appeared for her in the proceed-
ings up to and including the final decree), and filed a motion
to vacate the decree, and for grounds of said motion stated in
substance that she had not been guilty of adultery, that the
testimony of plaintiff's witnesses was given in the case as a
result of a conspiracy with plaintiff to wrongfully procure his
divorce, and that plaintiff himself had repeatedly been guilty
of adultery with two women whose names were stated in said
motion.  This motion was duly verified by the defendant's affi-
davit.  On May 10, 1907, defendant filed her amendment to
the motion, stating that, if given an opportunity, she could
produce other witnesses showing that she had not been guilty
of adultery, and that the plaintiff was guilty of adultery.  This
amendment was also signed by the same attorneys and veri-
fied by the affidavit of defendant.  On that day the court over-
ruled the motion to vacate the decree, and defendant prayed an

appeal. It does not appear, however, that the appeal was ever prosecuted.

On November 18, 1909, said defendant, through other attorneys, filed another motion to vacate the divorce decree, in which she alleged, in addition to her former charge of adultery against plaintiff, that said decree had been obtained through fraud practiced by plaintiff in producing false witnesses, that her attorneys failed to notify her of the day of trial of the divorce case, and were guilty of negligence in preparing her defense, thereby allowing unlawful advantage to be taken of her in the trial of the case. No action was taken by the court on that motion.

On July 22, 1909, she filed still another motion to vacate the divorce decree, containing allegations substantially the same as the last motion. This motion was signed by defendant, without counsel, and stated the following as her reason for delay in seeking to have the decree vacated: "That she has been delayed in her efforts to bring this epitome of her wrongs before this court for adjustment, being hindered and prevented in securing suitable counsel to represent her, having no money to pay for the same, and further states that she has been in search of new evidence which was favorable and material to her cause of action."

In addition to the prayer that the divorce decree be vacated, she prayed for a decree against her husband for alimony. The court heard the motion on January 13, 1910, and vacated the divorce decree, and dismissed the original complaint of the plaintiff, and also denied defendant's prayer for alimony. From this decree plaintiff R. B. Corney prosecuted an appeal to this court.

On the hearing of the motion, appellee adduced testimony tending to prove that appellant was guilty of adultery at various times prior to the divorce decree; that he openly lived in adultery with another woman for several years up to the date of the decree. Appellee testified that she informed her attorneys of those facts before the divorce decree was rendered, and that her attorneys declined to take depositions sustaining her charges against her husband, giving as a reason therefor that no money had been furnished to pay the expense of taking the deposi-

tions.  She also testified that her attorneys failed to notify her of the date of the trial, and that she did not know of the trial until the day after the decree was rendered.  Appellant introduced no testimony except as to the fact of his subsequent intermarriage with another woman after the decree was rendered. This marriage was solemnized August 26, 1907.

There is no testimony in the record tending to connect appellant or his attorney with the perpetration of any fraud in the procurement of the divorce decree.  So far as the record discloses, they prosecuted the suit for divorce with fairness and free from any fraud whatever.  The only charge made by appellee which the evidence sustains is that appellant was living in adultery with another woman during the pendency of the suit for divorce, that she informed her attorneys of that fact, and that they failed to make that defense and failed to notify her of the day of trial.  Does that constitute grounds for setting aside the decree?

Learned counsel for appellee concedes that "ordinary negligence on the part of an attorney is, as a general rule, imputable to his client."  He wisely adds that "this is a salutary rule, as otherwise shiftless attorneys would be at a premium as counsel for defense, and there would be no end to litigation." He argues, however, that the rule is different where omissions of an attorney result from a fraudulent design or collusion with the adverse party, and that such fraudulent conduct of an attorney which prevents his client from making his defense constitutes "unavoidable casualty or misfortune" for which a judgment or decree obtained by reason thereof will be vacated. Authorities are cited sustaining that contention.  *Anthony* v. *Karbach,* 90 N. W. (Neb.) 243; 23 Cyc. 1017; 1 Black on Judgments, 419.  We do not think, however, that the evidence in this case sustains the charge of fraud on the part of appellee's counsel in the suit for divorce.  She accuses them of failing to take depositions, but she admits that they stated to her before the trial that they had no money to defray the expense, and she further admits that she did not furnish them money to do this.  It is true that they could have applied to the court for an order requiring her husband to furnish the expense money, or they could have asked the court to hear oral testi-

mony, but their failure to do that, without other incriminating circumstances, establishes only negligence in failing to properly prosecute her defense. Nor does the failure of her counsel to notify her of the day of trial furnish proof of any greater degree of culpability than negligence. That alone, as is conceded by counsel for appellee, is not sufficient grounds to set aside a decree fairly obtained by the other party to the controversy. *Scroggin* v. *Hammett Gro. Co.,* 66 Ark. 183; 23 Cyc. 1016, note.

The fact that one of those attorneys appeared for appellee in the chancery court in two days after the divorce decree was rendered and presented to the court her motion to vacate the decree negatives the charge of intentional fraud. Those motions contained in substance the same allegations as the present one save as to the misconduct of counsel. The court heard the motions while the decree was within its control, and overruled them. No suggestion was made to the court by appellee at that time of misconduct on the part of her counsel, though she verified the motions by her own affidavit, and must have read them and ascertained their contents. We think that, according to her own testimony given at the hearing of this motion, no grounds are established for vacating the decree.

There is another reason why the decree should not be vacated. The appellee did not proceed with sufficient diligence to have the same set aside. This is especially true since it is shown that during the period of delay appellant intermarried with another woman. She applied to the court to set aside the decree within two days after its rendition, as already stated, without suggesting to the court any misconduct of her counsel. She procured this to be done by the same attorneys whom she now claims were guilty of misconduct in conducting her defense, and after the court overruled her motion she did nothing until after appellant remarried, waiting nearly two years before she took any further steps to have the decree set aside. The principle is one of almost universal application that, in order to vacate final judgments and decrees of courts of record on account of matter not appearing on the face of the record, the complaining party must move with diligence and before the status of the parties has changed or the rights

of third parties have intervened. *Jackson* v. *Becktold Ptg. & Book Mfg. Co.,* 86 Ark. 591.

"In deciding upon an application to strike out a judgment after the term is past, for fraud, irregularity, deceit, or surprise, the court acts in the exercise of its *quasi* equitable powers, and in every such case requires the party making the application to act in good faith and with ordinary intelligence. Relief will not be granted if he has knowingly acquiesced in the judgment complained of, or has been guilty of laches or unreasonable delay in seeking his remedy." 1 Black on Judgments, 313.

Mr. Bishop, in his work on Marriage and Divorce (vol. 2, § 1533), applying this principle to divorce decrees, says: "There are excellent reasons why judgments in matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with and after it so many collateral rights and interests of third persons that uncertainty and fluctuation in it would be greatly detrimental to the public. And particularly to an innocent person who has contracted a marriage on faith of the decree of the court the calamity of having it reversed and the marriage made void is past estimation. These considerations have great weight with the courts, added whereto there are statutes in some of the States according a special inviolability to such judgments."

This court in *Womack* v. *Womack,* 73 Ark. 281, gave full recognition to that principle, but held that it should not be applied in a case where remarriage of one of the parties occurred during the pendency of an appeal in this court. The court said: "Delay, however, will operate to the prejudice of the party applying, and, if unreasonably continued, bar the right. The delay in this case in bringing the suit did not work any prejudice to any third person. Had the party remarried while there was considerable delay, that would be a circumstance strongly tending against sustaining the action. No such considerations are in this case. The marriage occurred in the case of an appeal pending here in a case directly seeking to annul the divorce."

We are therefore of the opinion that appellee's application

to vacate the divorce decree should be denied, for the reason that she has failed to prove sufficient grounds to justify the court in so doing, and also for the reason that she has waited an unreasonable length of time before making application and until the appellant had married another woman. Her excuse for the delay is not sufficient. She attempts to justify the delay only on the ground that she was unable to employ counsel. She did, however, file her motion to vacate the decree two days after it was rendered, accepting for that purpose the service of the same attorneys, and said nothing about fraud having been perpetrated by them, though she knew then as much about the matter as she did later. If she then knew her attorneys to be untrustworthy, as she now claims, she should not have again left her cause in their hands, but should have insisted on their alleged misconduct being brought to the attention of the court as grounds for vacating the decree.

The order vacating the divorce decree is reversed, and the appellee's application is dismissed, leaving the original decree in force. The cost of the appeal will be awarded against appellant, inasmuch as appellee is shown to be unable to pay the costs, and was entitled to an opportunity to defend the decree in her favor. It is so ordered.

HART, J. (dissenting). "When a party employs an attorney at law, either to prosecute or to defend his suits in the courts of the country, he presents him to the opposite party and to the world as his accredited agent, and, as such, he must be concluded by his acts or omissions, where no fraud or unfairness is made to appear." *Lawson* v. *Bettison,* 12 Ark. 401. This is a correct and salutary rule of law, and was recognized in the later case of *Scroggin* v. *Hammett Grocer Co.,* 66 Ark. 183. My dissent is based upon the application of the principle to the facts of this case as disclosed by the record. It appears that Mrs. Corney had employed counsel to defend her in the divorce suit brought against her by her husband. She claimed that her husband had been guilty of adultery after their marriage, and told her attorneys that she personally knew of the fact of her husband's adultery, and also gave them the names of other witnesses who had knowledge of it. She had no money with which to take depositions, and said she had not received

the alimony allowed her by the court. In response to the following question: Q. "Were you present at the trial at Van Buren when Dr. Robert B. Corney obtained his last decree of divorce against you? If you state that you were not present, state why you were not." She answered: A. "I was not present. The reason why, I had been advised that the trial was not to be that day. I had been very sick, and had no money to pay my way to Van Buren. I had tried that day to borrow a dollar." Later on in her testimony she stated that the person who advised her that the trial was not to be on the day it was had was one of her attorneys.

When her deposition as to these matters was taken, the certificate of the officer before whom her deposition was taken shows that this same attorney was present representing her husband and as such cross-examined her. No attempt was subsequently made to contradict her testimony, and it stands in the record as undisputed. This brings the case within the exception to the general rule as stated in *Lawson* v. *Bettison, supra,* and is not an ordinary case of the failure of an attorney to notify his client of the day of trial.

Mrs. Corney states that the reason she did not sooner bring these matters to the attention of the court was that on account of poverty she could not sooner employ other attorneys who would represent her. The record does show that Dr. Corney married after he secured the divorce, but it also shows that he married the same woman with whom Mrs. Corney charges that he was living in adultery at the time he secured the divorce. In such case I do not think it can be properly said that the rights of a third party have intervened. It will also be noted that the same chancellor presided during the whole of these proceedings. I think his finding should be sustained.

Mr. Justice KIRBY concurs.