BAUER, EXECUTOR, *v.* BROWN.

Opinion delivered May 7, 1917.

1. PLEADING AND PRACTICE—WARNING ORDER—NECESSITY FOR MAKING "DILIGENT INQUIRY."—Before making the affidavit for a warning order, the plaintiff in a cause must under § 4, Act 290, 1915, make diligent inquiry as to the whereabouts of the defendant, and a judgment based upon a warning order, where the plaintiff has not made diligent inquiry, will be held to have been obtained by fraud (unless the defendant was at the time actually a non-resident).

2. DIVORCE—WARNING ORDER—DILIGENT INQUIRY.—In a suit for divorce plaintiff procured a decree based upon service by warning order. *Held,* a judgment of divorce obtained thereon was obtained by fraud, plaintiff not having made diligent inquiries to discover defendant's whereabouts, before making the affidavit.

3. DIVORCE—FRAUD—CANCELLATION OF DECREE.—A party seeking to cancel a decree of divorce for fraud, irregularity or deceit, must proceed with diligence after discovery of the fraud.

4. DIVORCE—PETITION TO SET ASIDE—LACHES.—Where A. obtained a decree of divorce against B. after service by warning order, B. is not guilty of laches when, within six days after she discovered that a decree had been rendered against her, she brought an action to set aside the decree.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*June P. Wooten* and *John A. Vick,* for appellant.

1. Brown never wrote the letters. The appellee wrote them herself.

2. The action was brought under section 6259, Kirby's Digest, and is not applicable.

3. The burden was on appellee to prove conclusively (1) that Brown was guilty of fraud upon the court; (2) that she had a meritorious defense; (3) that she was free from fault herself. 2 Nelson on Divorce & Separation, § 1054; 102 N. Y. 287; 6 N. E. 660; 23 Cyc. 1022-3; 39 Ark. 107; 93 *Id.* 462; 28 Tex. 733, 91 Am. Dec. 336. No fraud was shown and the charges were not proven. All the letters were forgeries. Brown acted in good faith. 101 Ark. 86; 79 *Id.* 289. The court had jurisdiction and the decree can not be vacated except for fraud perpetrated on the court.

4. No defense was shown. Kirby's Digest, § § 4433-4; 49 Ark. 397; 54 *Id.* 539; 69 *Id.* 518; 73 *Id.* 281. Her allegations were not sustained. She condoned all past offenses. 87 Ark. 175; 88 *Id.* 56.

5. She was not free from fault. 2 Nelson on Divorce & Sep., § 1056; 101 U. S. 141; 156 Mass. 223; 97 Ark. 117; 53 *Id.* 147. She was guilty of such fraudulent conduct as to bar her in equity. 57 Ark. 606. She failed to make a case, and for her inequitable conduct the decree should be reversed and the cause dismissed.

*Marshall & Coffman,* for appellee.

1. We attack the decree because it deprives plaintiff of her property rights. 57 L. R. A. 583, and note; 12 L. R. A. (N. S.) 891; 80 Ark. 451. No service was had. 53 Ark. 181. The affidavit for warning order was void. 69 Ark. 591; 147 Fed. 133; 71 Ark. 565; Kirby's Digest, § 7495; 53 Ark. 181; 47 Kan. 645; 46 Pac. 304.

2. The petition was filed within two years and showed void service. Kirby & Castle's Digest, § 7699; 72 N. W. 535; 147 *Id.* 95. A complete and meritorious defense was shown. 66 N. E. 998; 189 S. W. 841; 116 Ark. 427; 172 S. W. 960.

3. There was no condonation. 14 Cyc. 640.

4. Brown was guilty of fraud in obtaining the decree. 156 Pac. 277, 229, 778; 97 Atl. 35; 118 Pac. 177; 149 N. W. 666; 89 S. E. 575; 98 N. E. 109; 99 Am. Dec. 193; 139 N. W. 708; 148 S .W. 94. He knew his wife's residence. 79 Ark. 289; 101 *Id.* 86.

5. She was free from fault. The decree is right and is sustained by the evidence.

HUMPHREYS, J. Appellee instituted suit against appellants in the Pulaski Chancery Court, on November 10, 1916, to cancel a decree of divorce rendered by the same court on June 20, 1916, wherein Fred Brown was plaintiff and appellee was defendant; and to obtain a dower interest in all of Fred Brown's personal property and real estate. As a ground for cancellation of said judgment, the appellee set up that Fred Brown had procured the decree through fraud by filing a false affidavit to procure a warning order in which he stated that he had made inquiry and to the best of his information appellee was a nonresident of the State of Arkansas; that he also committed a fraud on the court rendering the decree by failing and refusing to furnish the attorney *ad litem* with information as to appellee's whereabouts; that she had a meritorious defense to the divorce suit in which judgment was rendered; and, lastly, that the affidavit for the warning order did not meet the requirements of the law. She asked that her bill be also treated as a motion to defend under section 6259 of Kirby's Digest of the statutes of Arkansas. Appellants, the executor and children of Fred Brown, deceased, filed a demurrer to the complaint, which was overruled, and then filed an answer denying all the material allegations of the complaint.

The cause was heard by the same chancellor who rendered the original decree, upon the pleadings, exhibits and evidence, from which he found and decreed that the decree of divorce, rendered on June 20, 1916, should be set aside and held for naught so far as the property rights of the parties therein were concerned. An appeal

has been prosecuted to this court, and the cause is here for trial *de novo.*

The ground set up for divorce in the original suit was desertion. In section 2672, Kirby's Digest, it is provided that a divorce may be granted "where either party wilfully deserts and absents himself or herself from the other for the space of one year without reasonable cause." The weight of the evidence is to the effect that Fred Brown forced his wife to leave him without reasonable cause, and declined to allow her to return. Upon a careful reading of the whole evidence, the court is of opinion that the chancellor would not have granted the decree of divorce had the entire evidence in this record been before him when he rendered the original decree.

Having determined that appellee had a meritorious defense to the cause of action for divorce, instituted in May, 1916, by Fred Brown against her, the next question to be determined is, did Fred Brown practice a fraud upon the court for the purpose of obtaining the decree on June 20, 1916? The divorce decree in question was rendered upon constructive service. On May 1, 1916, the bill was filed and a summons was issued, directed to the sheriff of Clark County, and sent to the sheriff at Okolona. A *non est* return was made by the sheriff of Clark County on the summons. Fred Brown lived at Wrightsville, in Pulaski County, near Henry Aiken, a brother to his wife, Lelia Brown. Lelia Brown also had an uncle living at Okolona. She and her mother had been living at Okolona until February, 1916, when the mother moved to Malvern. There is a conflict in the evidence as to whether Lelia Brown went to Malvern with her mother in February, or at a later date. There is evidence tending to show that she did not follow her mother to Malvern until the month of May, 1916. Appellee testified that she was in Malvern at the time the summons was sent to the sheriff at Okolona to be served upon her. Henry and Annie Aiken testified that they corresponded with Lelia

Brown in Malvern prior to May 1, when the summons was issued, and May 11, when the affidavit for warning order was made, and had told Brown that his wife was in Malvern. As far as this record discloses, Lelia Brown had lived in Arkansas all her life. We think a fair inference from all the evidence in this case is, that had Fred Brown made that character of investigation required by law before filing an affidavit for a warning order, he could easily have ascertained the whereabouts of his wife on May 11, when he filed the affidavit to the effect that she was a nonresident of the State of Arkansas.

Section 4 of Act 290, Acts of Arkansas, 1915, entitled "An act to regulate pleadings and practice in the circuit and chancery courts of the State of Arkansas," requires the plaintiff in an action, in order to obtain a warning order, to file an affidavit that "he had made diligent inquiry, and that it is his information and belief that the defendant is a nonresident of this State." The extent of the investigation or inquiry by Brown as to the whereabouts of Lelia Brown consisted in sending a summons to Okolona to be served upon her there. Brown lived near Aiken, who was a brother of Lelia Brown, and had he inquired he could have ascertained from Aiken where Lelia was at the time he began his suit. Had he failed to ascertain her whereabouts from her brother, he could have written to her uncle at Okolona for information and by such inquiry would, in all probability, have located her. If it was not convenient for him to write to her uncle, he could have notified the attorney *ad litem* to make inquiry of her uncle who lived at Okolona.

(1) The purpose of amending section 6055 of Kirby's Digest was to require plaintiffs, before making an affidavit as to the nonresidence of the defendant, to make a diligent inquiry to such an extent that he can say upon information and belief that the defendant is a nonresident of the State. Section 6055 of Kirby's Digest did not require a diligent inquiry as to the whereabouts of the defendant, and the practice grew up of swearing to the affi-

davit more as a matter of form than a matter of fact. Under the amendment to that section, one can not make an affidavit that will support a warning order until he has first made a diligent inquiry as to the whereabouts of the defendant. It is contended that Fred Brown is an honest negro and acted upon the advice of white friends in procuring service in his divorce suit. This can avail him nothing. That statutes providing for constructive service must be complied with, is conceded by learned counsel for appellants. This court is of opinion that the requirements of such statutes can not be avoided through the advice of others. A plaintiff can no longer guess as to the whereabouts of the defendant and procure a warning order upon the formal affidavit based on the guess. Before making the affidavit he must make diligent inquiry as to the whereabouts of the defendant and must gain information upon which he can base an honest belief that the defendant is a nonresident. Anything less than this will amount to a fraud in procuring the judgment, unless it develops that the defendant was at the time a nonresident of the State.

(2)    We think the weight of evidence in this case is with the chancellor in his finding that Fred Brown failed to make diligent inquiry before filing his affidavit for a warning order in the divorce suit in question, and in his finding that defendant was not a nonresident of the State at the time the affidavit was filed and the warning order obtained. At least, it can not be said that the findings of the chancellor are contrary to the clear preponderance of the evidence.

(3)    It is contended that appellee is estopped from prosecuting this suit to vacate the original judgment for the reason that she did not institute the suit within a reasonable time after discovering the fraud practiced on the court by her husband, Fred Brown. It is well established, and this court is committed to the principle that a party seeking to cancel a decree of divorce for fraud, irregularity or deceit must proceed with diligence after discovery

of the fraud. Such relief will not be granted if the complaining party is guilty of laches or unreasonable delay in seeking the remedy. *Corney* v. *Corney,* 97 Ark. 117, and authorities therein cited.

(4) There is a sharp conflict in the evidence in this case as to whether appellee knew or had an opportunity to know that her husband had procured a decree of divorce until after he died, on November 4, 1916. We can not say that the finding of the chancellor on this point was contrary to the clear preponderance of the evidence. Appellee admits that she discovered that her husband had procured a decree of divorce on November 4 or 5, and this suit was brought on the 10th of November thereafter. If the chancellor is correct in his finding, and we are inclined to the view that he is, she brought the suit within six days after she discovered that a divorce had been obtained by her husband. This would not be an unreasonable time to wait.

Finding no error in the decree of the court canceling the decree of June 20, 1916, in so far as it affects the property rights between the parties to said decree, and in decreeing to appellee her interests as widow in the property of which Fred Brown died seized and possessed, the decree is in all things affirmed.