BUTLER *v*. BUTLER.

Opinion delivered April 2, 1923.

1. DIVORCE—RESIDENCE IN STATE.—Evidence *held* not to show plaintiff's actual residence in the State for one year next before the commencement of suit, as required by Crawford & Moses' Dig., § 3505.

2. DIVORCE—SUIT TO ANNUL DECREE—LACHES.—Where a husband sued for divorce in Arkansas, and immediately thereafter brought a similar suit in Missouri but told his wife that the decree obtained in the Arkansas suit in 1916 was void, and they continued the marital relation until 1918, when he left her without cause, *held*, in a suit brought in 1921 to vacate the Arkansas decree, that she was not guilty of laches.

3. DIVORCE—SUIT TO ANNUL DECREE—LACHES.—Where a husband began suit for divorce in Arkansas, and induced his wife to come to Arkansas to serve process on her, and thereafter began suit in Missouri, stating that the decree in the Arkansas suit was void, her failure to make defense in that suit did not preclude her from suing to annul the decree.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder*, Chancellor; affirmed.

*Smith & Gibson,* for appellant.

There was no fraud shown in obtaining the decree, and appellant was at the time and had for years before been a resident of the State. Appellee was barred by laches, having waited over five years before proceeding to have decree of divorce vacated. 15 R. C. L. 146; *Corney* v. *Corney,* 97 Ark. 117, 134 S. W. 813. 1 Black on Judgments, 313; 2 Bishop, Marriage & Divorce, 1533. Cause should be reversed and dismissed.

*Jerry Mulloy,* for appellee.

The chancellor's findings are supported by a preponderance of the testimony, and will not be disturbed on appeal. *Cherry* v. *Brizzolara,* 89 Ark. 309; 116 S. W. 668; 91 Ark. 69, 120 S. W. 400; 91 Ark. 149, 120 S. W. 843; 101 Ark. 368, 142 S. W. 856; *Kissire* v. *Plunkett-Jarrell Co.,* 103 Ark. 473, 142 S. W. 567; *Evans* v. *Wills,* 212 S. W. 328. Statute on divorce contemplates actual residence by plaintiff in State. 194 S. W. 498; 15 S. W. 459. 4 Enc. of Evidence 749. No laches in bringing suit to vacate decree. 10 R. C. L. 403. *Williams* v. *Bennett,* 75 Ark. 312, 88 S. W. 600; 16 Cyc. 170; *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953. Laches, if not pleaded, waived. 16 Cyc. 170; *Humphreys* v. *Butler,* 51 Ark. 351, 11 S. W. 479; *Wilson* v. *Anthony,* 19 Ark. 16; 10 R. C. L. 408.

HUMPHREYS, J. On January 4, 1921, appellee instituted suit against appellant, in the Eastern District of Lawrence Chancery Court, to vacate a decree of divorce procured on July 13, 1916, in said court, by appellant against appellee, alleging that the decree was obtained through fraud practiced upon the court and her. It was alleged in the appeal that, in order to obtain the decree, appellant falsely represented to the court that he was and had been a resident of the said State of Arkansas one year next before the commencement of the suit, and to appellee that he had dismissed the suit; that appellee had a meritorious defense to the alleged cause of action,

which she would have interposed had she not been misinformed concerning the dismissal of the case.

Appellant filed an answer denying the allegations of fraud, and pleading laches in bringing suit to set aside the decree.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree annulling the divorce decree rendered on the 13th day of July, 1916, wherein appellant was plaintiff and appellee defendant, upon the ground that appellant was not a resident of the State of Arkansas when the decree was rendered, nor for one year next before the commencement of the suit. An appeal was duly prosecuted to this court, and the cause is here for trial *de novo*.

Appellant and appellee were intermarried in Lawrence County, Arkansas, on January 21, 1909. They located in Walnut Ridge, but later moved back to Hoxie. Appellant was a locomotive engineer, his run being out of Hoxie, Arkansas, to Poplar Bluff, Missouri. He purchased a home in Hoxie. Appellee testified that on April 3, 1912, the family, consisting of appellant, herself, and child, moved from Hoxie to Poplar Bluff, taking all their household goods, except a few pieces which were sold; that they lived together in Poplar Bluff until March or April, 1916, at which time appellant left her and took up his abode on Park Avenue in said city; that a short time after the separation appellant induced her to go to Hoxie on business, where, without any warning, a summons in a divorce suit was served upon her; that, before the return day thereon, appellant commenced a divorce proceeding in Missouri, and told her he had dropped the suit in Arkansas; that, relying upon this statement, she made no defense to the suit in Arkansas, although she had a meritorious defense thereto; that she had never offered indignities to her husband, but, on the contrary, had been devoted and kind to him; that appellant failed to get a decree of divorce in Missouri, and toward the latter part of July informed her that he had gotten a

decree in Arkansas which was void, whereupon they renewed and continued their marital relationship until July 1, 1918; that she relied upon his representation that the decree was void, and remained under that belief until she consulted an attorney a short time before the institution of this suit; that she did not go to Hoxie for the purpose of being served with a summons in the divorce suit of appellant, but was surprised when same was served upon her. Mrs. J. H. Turner testified that when Mr. and Mrs. Butler went away from Hoxie they said they were moving to Poplar Bluff. T. L. Moore testified that Mr. Butler rented a house from him in Poplar Bluff for occupancy by himself and family. Louie Byrkit testified that appellant and his family resided together in Poplar Bluff the latter part of 1915 and the first part of 1916; that appellant was with his family a great deal of the time. Appellant admitted that he maintained and supported his family in Poplar Bluff from 1912 until March or April, 1916, paying the rent on the various houses in which they lived, and residing with them when not out on his run to Hoxie. He also admitted that, after the rendition of the decree, he lived with and maintained his family until July 1, 1918. Appellant testified in his own behalf that, at the time his wife moved to Poplar Bluff, he rented his home place, reserving a room, which he furnished, and occupied when at Hoxie; that he spent more time in Hoxie than in Poplar Bluff; that he paid his poll tax and voted in Arkansas; that he did not represent to appellee that he dismissed the suit in Arkansas, but that the decree obtained by him was void. He was corroborated by Ellen Ebert in reference to occupying a room in his house, and being in Hoxie more than in Poplar Bluff. After the instant suit was commenced, appellant brought suit in Howell County, Missouri, for a divorce from appellee, and took depositions of several witnesses in that case. The main prayer of the bill filed in Howell County was to dissolve the bonds of matrimony between appellant and appellee.

The record also reflects that, after the family went to Poplar Bluff, appellant bought a motor truck at a cost of $900 and engaged in the traffic business in that city, and later in Willow Springs, Missouri, and that he purchased a Ford automobile for use at Poplar Bluff.

Appellant's first insistence for reversal is that the court erred in finding that appellant had not been a resident of the State of Arkansas for one year next before the commencement of his action on June 3, 1916. An actual residence in this State for one year next before the commencement of an action for divorce is necessary, in addition to the legal cause of divorce, in order to obtain a decree either from bed and board or from the bonds of matrimony. Crawford & Moses' Digest, § 3505. While the testimony was in sharp conflict, we think the preponderance thereof shows that appellant's real or actual residence, prior to his suit in Arkansas, was with his family in Missouri. He maintained a home there for four years next before the commencement of his suit, which was occupied constantly by his family and by all of them when he was not out on his run. He had a traffic business and kept his touring car there. When they moved to Poplar Bluff, it was with the avowed intention of living there, according to the testimony of Mrs. Turner, one of appellant's own witnesses. They sold some of their furniture, and shipped the balance from Hoxie to Poplar Bluff, and rented the Hoxie home indefinitely. It is true that afterwards appellant procured a room from his tenant, which was not being used, furnished and occupied it when at that end of his run. We do not regard this as a controlling fact in establishing a residence at Hoxie, for it was necessary for him to have a place to sleep when away from his family in the performance of his duties as engineer. Ordinarily one's *bona fide* residence is with his family. When otherwise, it is an exception. We find nothing in the record necessarily bringing appellant within the exception to the general custom. It is not claimed that the family was away from Hoxie

temporarily for school or other purposes. According. to the weight of the testimony, they were being maintained there permanently by appellant, and he was regarded by them and his neighbors as the head of the household for a number of years next before the institution of his divorce suit in Arkansas.

Appellant's second insistence for reversal is that appellee was barred by laches from bringing this suit to set the decree aside, even though obtained through fraud. Appellee was informed by appellant the latter part of July, 1916, that he had obtained a decree of divorce from her in Arkansas. She did not bring this suit to annul the decree for more than five years after receiving the information. Ordinarily this length of time should be treated as an unreasonable delay in seeking a remedy. Especially should it be so if the status of the parties had been changed. Neither appellant nor appellee have changed their status. According to appellee's testimony, she was lulled into nonaction by appellant's representation that the decree in Arkansas was void; that, through this representation, she was induced to renew and continue the marital relationship until July 1, 1918, at which time appellant left her without cause; that she did not proceed then because she rested under the belief that the decree was void, until informed otherwise by appellant a short time before the institution of this suit. While appellant denies making the representation, yet his conduct and acts indicate that he did so. He admits that, a short time after the decree was rendered, he assumed his former place in the household as the head of the family, and that they continued to occupy the same home until July 1, 1918. Unless he represented to appellee that the decree was void, and, unless he really thought so himself, his resumption of the marital relationship was unfair and without due regard to the rights of his family or society. The fact that he brought suit in the Missouri court to obtain a decree, immediately after the institution of this suit, strongly indicates that he, in good faith, believed

that the Arkansas decree was void. If he believed this himself and acted upon it, it is easy to see how appellee might have done so. On account of the close relationship of the parties, the same degree of diligence should not be exacted of her as if she had been dealing with a stranger. Under all the circumstances of the case she was not guilty of laches. Neither was she precluded from bringing this suit because she made no defense to the original suit. It is true she was served with summons to appear in that case, but before the day of trial, according to the weight of the evidence, she had been misled into the belief that the suit had been dismissed.

No error appearing, the decree is affirmed.

McCULLOCH, C. J., (dissenting). I do not agree with the majority of the court in the conclusions announced with respect to the facts of the case, but my dissent is not based on that ground, for I would not deem it proper to record a dissent merely because I differ with the other judges on the facts of a case. The undisputed facts in the case, however, are that appellee waited five years after the decree of divorce was rendered and after she had knowledge of its rendition. She makes excuse for part of the delay by the statement that appellant told her shortly after the decree was rendered that it was void, and that he lived in the same house with her for about two years thereafter; but she offers no excuse or explanation whatever of the delay of three years after all relations between her and appellant had actually terminated. She testified that her husband occupied the same house with her and the children at times for about two years after the rendition of the decree. He was a railroad conductor, running from Hoxie, Arkansas, to Poplar Bluff, Missouri, with a lay-over at Hoxie, and he maintained a room at Hoxie, and was there more than he was at Poplar Bluff.

Conceding that the delay of two years in suing to set aside the divorce decree is excused by the fact that appellant continued his married relations with appellee,

I think that appellee is barred by the further delay of three years, which is not disputed or excused by any fact shown in the record.

In our decisions we have recognized the rule that the party against whom a judgment or decree has been rendered, especially a decree for divorce, will be barred by unreasonable delay from an attempt to set aside the decree. *Womack* v. *Womack,* 73 Ark. 281; *Corney* v. *Corney,* 97 Ark. 117; *Whitford* v. *Whitford,* 100 Ark. 63. In one of these cases we quoted with approval the following statement from Mr. Bishop in his work on Marriage and Divorce (Vol. 2, sec. 1533) : ''There are excellent reasons why judgments in matrimonial causes, whether of nullity, dissolution, or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with and after it so many collateral rights and interests of third persons, that uncertainty and fluctuation in it would be greatly detrimental to the public. And particularly to an innocent person who has contracted a marriage on faith of the decree of the court, the calamity of having it reversed, and the marriage made void, is past estimation. These considerations have great weight with the courts, added whereto there are statutes in some of the States according a special inviolability to such judgments.''

It will be noted that the learned author lays emphasis on the application of the doctrine of laches where a subsequent marriage has been contracted, but he only mentions it for the purpose of emphasis, and says that this doctrine is particularly applicable in such a case, but the general doctrine is stated that, on account of the public interest in the matrimonial status of parties, stability must be accorded to divorce decrees.

In *Womack* v. *Womack, supra,* we held that the wife was not barred by delay, or remarriage of the husband, because the remarriage had occurred after the decree in the suit to annul a former decree of divorce had been

rendered and while the appeal to the Supreme Court was pending. In *Corney* v. *Corney, supra,* we held that the wife was barred because she waited an unreasonable length of time and her husband had remarried, but we quoted from Mr. Bishop the doctrine stated above merely as an additional reason, on account of the remarriage, for holding that the wife was barred by the delay.

Society is interested in the relations between the sexes, whether there is any change in the status of the parties or not, and, regardless of a change, an unreasonable delay bars the right of one of the parties to annul a decree for divorce. It is therefore no excuse for the delay merely to show that there has been no change in the status of the parties. Time itself necessarily works a change in the status of parties who have been divorced by a decree, and nothing else need be shown to bar one of the parties from asserting the right to annul the decree if the delay is unreasonable and without excuse. The fact that the parties acquiesced for a long period in a decree of divorce by maintaining themselves separately is enough to give the public such an interest in the maintenance of the relation to afford grounds for denying relief to either of the parties for the purpose of setting aside the decree and reestablishing the original marital status.

I am of the opinion therefore that appellee is barred by unreasonable and unexplained delay, and that there was no reason shown at this time why she should be permitted to annul the decree for divorce and thereby reestablish between her and appellant the relation of husband and wife.