MAPLES *v.* MAPLES.

4-2907

Opinion delivered April 3, 1933.

*J. W. Atkinson,* for appellant.

*M. V. Moody,* for appellee.

SMITH, J. This appeal is from a decree of the Pulaski Chancery Court rendered on May 14, 1932, in which the court refused to vacate and set aside a prior decree rendered on July 31, 1931, which last-mentioned decree had declared void a decree rendered on December 20, 1917, in the Pulaski Chancery Court in which B. F. Maples had been granted a divorce from his wife, Emma Lou Maples. The decree of July 31, 1931, appears to have been rendered in an *ex parte* proceeding, whereas the decree from which this appeal comes was an adversary proceeding in which the two women hereinafter referred to appeared and were heard.

The testimony developed the following facts: B. F. Maples filed suit for divorce in the Pulaski Chancery Court in 1917 against Emma Lou Maples, his wife, upon the ground of desertion, and upon service by the publication of a warning order a decree of divorce was rendered in proper form on December 20, 1917. Testimony was offered at the trial, from which this appeal comes, to the effect that the allegation of the complaint in that case that the plaintiff, B. F. Maples, was a resident of the State of Arkansas was false, he being at the time a resident of the State of Alabama, and to the further effect that the allegation that his wife, the defendant, had deserted him was also false.

After the rendition of the decree of divorce on December 20, 1917, B. F. Maples married Bertha D. ten days later in Lincoln County, Tennessee, and on December 26, 1918, a child was born, who was given his father's full name. After this second marriage Maples returned to the community in Alabama, where he had resided with the wife from whom he obtained the divorce in this State, and continued to reside in that community. He was, however, drafted into the Army of the United States, and, while serving in that capacity at a training camp in the State of Mississippi, his death occurred on August 24,

1918. On July 24, 1924, a death compensation benefit was awarded Bertha D. and her son, B. F., Jr., by the United States Veterans' Bureau in the sum of $65 per month, which they have since continuously drawn from the Government.

B. F. Maples lived with his second wife in the same county in Alabama and not many miles from the home of his first wife, who, when asked, ''When did you first learn that B. F. Maples had married Bertha D. Maples?'' answered, ''Soon after the marriage.'' And she testified also that she learned that a child had been born ''some three or four months after my husband's death.'' When asked, ''When did you first learn that Bertha D. Maples was drawing monthly death compensation benefits as the widow of B. F. Maples from the Government?'' answered, ''Something like a year ago.''

It may be said that the testimony establishes the fact that the original decree of divorce was procured in this State through a fraud practiced upon the court, in that B. F. Maples was not a resident of the State of Arkansas as he had alleged in his complaint. Whether he could have furnished any explanation of the apparent fraud if he were alive is a matter of speculation.

It may also be said that Mrs. Emma Lou Maples proceeded with reasonable expedition after discovering that a death benefit had been awarded to the widow of B. F. Maples; but this is not the date to be considered in determining whether she has been guilty of laches.

Without questioning the good faith of either of these unfortunate women, it may be said that neither is now the wife of B. F. Maples, who is dead. They are both single women. The case is like that of *Moyer* v. *Koontz*, 103 Wis. 22, 74 Am. St. Rep. 837, in which the Supreme Court of Wisconsin said: ''The object of such a suit as this, when the husband is alive, is to adjudicate that whereas by the existing fraudulent decree the plaintiff is made single, she shall, by the demanded judgment, be adjudicated to still be married. It is the converse of the divorce suit, where the relief sought is that, whereas the plaintiff is now married, she may be adjudged to be

single. But, in a case like this, where, by the irrevocable act of death, her status as to her deceased husband has become fixed as that of a celibate, no such question can exist to be acted on. No decree that the courts of Wisconsin can render can change that status. It then becomes a mere adjudication as to a record, for the purpose of satisfying a sentiment or affecting property rights. As is well said in 2 Nelson on Divorce and Separation, § 1054: 'The proceeding will be a mere contest for property, for, if the decree is vacated, the survivor cannot be restored to marital rights' (or status).''

The case of *Graham* v. *Graham*, 54 Wash. 70, 102 Pac. 891, was one in which a decree of divorce was attacked upon the ground that it had been procured through fraud practiced upon the court, and is very extensively annotated in L. R. A. 1917B, the annotation extending from page 409 to page 512. The annotator says in his note that: ''Whoever would have a judgment set aside on the ground that it was obtained by fraud, duress, accident, mistake, or surprise must act diligently in seeking relief, and the rule requiring diligence and prompt action attacking judgments upon such grounds is the same respecting decrees of divorce as other judgments and decrees.''

Among the numerous cases cited in support of this statement of the law is our own case of *Corney* v. *Corney*, 97 Ark. 117, 133 S. W. 813, in which a headnote reads as follows: ''Where the defendant in a decree of divorce waited two years before taking steps to vacate the decree upon the ground of the fraud of her attorneys and until the plaintiff had married another woman, her application should be denied on account of laches.''

We there quoted from Bishop on Marriage and Divorce (vol. 2, § 1533) as follows: '' 'There are excellent reasons why judgments in matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with it and after it so many collateral rights and interests of third persons that uncertainty and fluctuation in it would

be greatly detrimental to the public. And, particularly to an innocent person who has contracted a marriage on faith of the decree of the court, the calamity of having it reversed and the marriage made void is past estimation. These considerations have great weight with the courts, added whereto there are statutes in some of the States according a special inviolability to such judgments.' "

Here, the first wife, having been advised that her husband had married another woman in 1917, waited until after her husband was dead and until 1931 before proceeding to have the divorce decree vacated. We feel constrained to hold that she waited too long, and is barred by her laches.

The decree of the court below, from which this appeal comes, which vacated and set aside the decree of divorce, will therefore be reversed, and the cause will be dismissed.