BROWN *v.* BROWN.

4-8096                                      200 S. W. 2d 488

Opinion delivered March 10, 1947.

*W. A. Leach,* for appellant.

*Virgil R. Moncrief* and *John W. Moncrief,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from a decree wherein Sec. 8222 of Pope's Digest was relied upon. The statute is discussed at length in *Davis* v. *Cullums,* 205 Ark. 390, 168 S. W. 2d 1103.

In 1932 John Oliver Brown married Martha, a widow with two sons and a daughter. July 15, 1941, John left Martha and his step-children in Stuttgart and went to Chicago. October 21 following John wrote the letter shown below.[1]

September 15, 1943, Martha sued for divorce. Appropriate jurisdictional steps were taken, including ap-

[1] "Mrs. Martha Brown. Dear one: Holly greeting to you in Jesus name. I am savte from sin. an in prayzing Jesus I am well. and hope you are the same. I am writing to let you no that I am not going to be your no more. So if you will get you some one, and forget all about me and I will forget you and do not come looking for me. for it is nothing doing for you. Yours truly, John O. Brown, 7535 W. 64th St., Argo, Ill." [Argo is a suburb of Chicago, about twelve miles from the city proper].

pointment of an attorney *ad litem*. John received notice that the suit was pending, but in the proceedings from which this appeal comes he claimed that the attorney's letter was not received in time for defense to be made. In other parts of his testimony John says that he remarried in October, 1943, "shortly" after receiving the attorney *ad litem's* letter giving information that Martha had filed suit. As a matter of fact, the divorce decree was not rendered until November 22, 1943. For the purpose of this opinion it will be assumed that John's Chicago marriage occurred after November 22d.[2]

Martha died May 27, 1944, in consequence of a homicidal act.

When John left Stuttgart he was owner of a residence and certain rental property. They were mortgaged for $550. The record is unsatisfactory regarding value of the equities in 1941. Appellant contends the three lots with buildings were worth $3,000. Evidence adduced at the hearing on motion for retrial was that the property was worth between $700 and $800.

August 7th, 1944, appellant moved for a new trial. This was followed by an answer to the original divorce action. Appellant admitted that after marrying Martha the realty in question was acquired. It was mortgaged, but appellant denied there was an agreement with Martha that if she would discharge the indebtedness the estate should become hers. There was denial that Martha paid appreciably on the debt, but to the contrary, John says he sold other holdings and reduced the obligation to less than $100. The prayer was " . . . that the complaint of the plaintiff be dismissed for want of equity, and for all other relief".

In appellant's motion for a new trial it was alleged that because of constructive service, he had no knowledge prior to final decree that the action was pending.

John returned temporarily to Stuttgart. His deposition was taken in Arkansas County November 21, 1944.

[2] Admission by counsel for appellant. [Tr. 53].

The record shows that a letter to him (which he admitted receiving) was written October 23, 1943—a month before the decree was rendered.

Chief contention is that there must be a new trial, irrespective of the divorce, and that ancillary to this proceeding property rights should be determined. We agree with appellant, as expressed by counsel, that he was entitled to file an answer, ". . . setting up his defense, and may offer any evidence competent to establish such defense. The plaintiff may offer such evidence as may be preserved in the record and such additional competent evidence as may be desired. The Court can then award such relief as is justified by the pleadings and the proof. It may vacate, modify, or set aside the former judgment".

Appellant contends that the complaint filed by Martha was limited specifically to the matters enumerated: (a) Decree of absolute divorce; (b) reasonable sums payable monthly for support; (c) vesting, quieting, and confirming in Martha a fee simple title to the real property, and (d) "all costs herein expended, including suit money and attorney's fee, and all other proper relief".

Counsel has carefully traced from Chapter 51 of the Revised Statutes the section now appearing in Pope's Digest as 4393, showing amendments, etc. The benefits or relief mentioned in § 4393 define a limit, says counsel, beyond which the Court may not go; and, since alimony is not assessable in a gross sum, Martha's support and maintenance should not have been computed from July 15, 1941, when the act of desertion is alleged to have occurred.

In *Walker* v. *Walker,* 147 Ark. 376, 227 S. W. 762, it was held that an action for divorce against a nonresident where the service was constructive could not result in a personal judgment, and that a decree for alimony and attorney's fee is personal. But see *Smith* v. *Haltom,* 177 Ark. 790, 8 S. W. 2d 437, where it was held that the request of the plaintiff in a divorce proceeding that domestic funds of her nonresident husband

(constructively served) be held amounted to an equitable garnishment from which alimony might be paid.

The holding in *Strickland* v. *Strickland,* 80 Ark. 451, 97 S. W. 659, is that while death terminates a divorce suit, yet where property rights depend upon correctness of the decree and an appeal has been taken, it is the duty of this Court to entertain jurisdiction in order to settle such rights, notwithstanding death of the husband *pendente lite.* Chief Justice Hill, who wrote the opinion, said: ''This is not a divorce suit now in the proper sense of the term, but a mere review of a divorce decree to ascertain its correctness in order to fix property rights. The reasons usually appealing to a court in favor of [allowances] do not appear here, and the usual means of enforcing such order no longer exists''.

*Corney* v. *Corney,* 97 Ark. 117, 133 S. W. 813, illustrates the equitable principle that if a plea of laches has been made it will be sustained in the interest of justice where because of changed conditions the complaining party can lose nothing but costs and if sustained may profit substantially.

Appellant, in his brief, mentions the matters that should have been retried, but says '' . . . they were not, since the Court found that John, by his remarriage, had estopped himself''.

While the property was not, in its entirety, subject to the claim of Martha as dower, (and that part of the original decree is erroneous but now harmless) the Chancellor did not underestimate the weight of evidence in finding—in consequence of the second trial—that appellant willingly attempted to part with his equity before leaving Stuttgart in 1941; that he told Martha the property would be hers if she paid it out; that she, with the assistance of the children, did make payments, and that during the twenty-eight months between abandonment of Martha and her divorce John treated the mortgage of $550 as non-existent, and neglected to pay taxes. Nor do we agree with appellant that the hearing on John's motion for a new trial was not in fact a trial. Witnesses were heard, statements of ac-

counts were submitted, and John's deposition covers twenty-two pages of the transcript.

Martha's two sons were in the military service and from their allotments payments on the property were made. After Martha was killed the children employed private counsel to assist the Prosecuting Attorney in procuring a conviction. For this purpose a mortgage on the lots was executed and $350 procured.

The decree appealed from expressly finds that there was a trial. The opening sentence is, "Now on this day regularly comes on to be heard this case, same having been duly submitted in term time, and . . . all parties duly and properly agreeing and consenting to a trial hereof in vacation, and at this time, and all parties announcing ready for trial, the Court doth proceed to a hearing hereof on the original pleadings, complaint, . . . the original decree rendered by the Court on November 22, 1943, . . . depositions of John Oliver Brown, Elizabeth Ice, Rosie Lee Phillips, Theodore W. Montgomery, O. J. Miller, D. T. Oaksmith, and John W. Moncrief, together with exhibits thereto; and the Court, after hearing the evidence and argument of counsel, . . . doth find . . . that the decree of November 22, 1943, should not be vacated". Form of the decree was approved by the indorsement of appellant's counsel.

It can be argued, of course, that refusal to vacate the old decree with its award of the property to Martha as dower is demonstrative error calling for a reversal; and so it would be if this were the only ground upon which the transaction could rest. But it must be remembered that a little more than three months after John left Stuttgart he wrote concerning his spiritual regeneration. So enraptured was he that no mention was made of worldly commodities recognized in law as real property; there was no overture of cooperation looking to preservation of the houses for mutual benefits. When John Oliver Brown left Martha, he quit with a finality not easily misunderstood, and with the inscribed admonition, "It is nothing doing for you".

Although John, by his own repeated assertions, married Chicago's Geneva Williams in October 1943 while Martha was still his wife, he must, in the case at bar, abide the date stipulated by deposition, effect of which is to postpone until after divorce the new relationship. Without the decree of November 22 there could have been no lawful union with Geneva. When all transactions under consideration are appropriately appraised, the conclusion is inescapable that John did not intend to reassert any claim to the property. His temptation to recover appears to have been transmuted into action when death removed Martha and erased the facts with which she was familiar; but in the meantime—and because of the divorce, as John says—he was enabled to acquire a new wife and by absenteeism be relieved of the "heavy load he was carrying" at Stuttgart.

Although appellees are the heirs of Martha Brown, evidence preponderates that each of the three children had worked—the boys in particular—and that their earnings were turned over to the mother and presumptively became a part of the fund with which the mortgage debt was paid. In addition, the boys, relying upon their stepfather's conduct as evidence that the property had been turned over to their mother, made payments from money earned in the armed service; and finally $350 was borrowed in reliance upon the decree. In these circumstances appellant, while entitled to the trial because of statutory provisions, will not be permitted to avoid the divorce Martha obtained from him on virtual invitation; nor may he prevail over the equities of others.

Affirmed.