Elizabeth Z. SELF *v.* Mildred SELF

CA 93-517                                          878 S.W.2d 436

Court of Appeals of Arkansas
En Banc
Opinion delivered July 6, 1994

*Legal Services of Arkansas*, by: *Ben Seay*, for appellant.

*Ronald L. Griggs*, for appellee.

JOHN E. JENNINGS, Chief Judge. This appeal is a result of a dispute between Elizabeth and Mildred Self, the two wives of Alex Self, now deceased, over which one is entitled to the deceased's veteran's benefits. The issue is whether the motion of Mildred Self, the first wife, to set aside an earlier divorce decree, is barred by the doctrine of laches. The trial court held that it was not and we affirm.

There is no serious dispute as to the facts. Alex and Mildred Self were married in 1947 and eventually had four children. Alex served in the military overseas.

In 1964 Alex and Mildred returned from Tripoli, Libya, and moved to Pineville, Louisiana, where they owned a home. Alex was stationed at the air force base in Clinton, Oklahoma and Mildred and the children remained in Pineville.

On September 1, 1965, Alex filed a complaint for divorce in Union County Chancery Court, alleging that he had been a resident of the state of Arkansas for more than ninety days and that Mildred's last known address was Alexander City, Alabama.

A warning order was issued and an attorney ad litem wrote Mildred at an address in Alexander City. The letter was returned as "undeliverable." It is undisputed that Alex had not been a resident of Arkansas for the time prescribed by law, that Mildred was not then a resident of the State of Alabama, and that Mildred had no notice whatsoever of the proceedings.

On October 8, 1965, Alex obtained a decree of divorce and promptly returned to his home in Pineville, Louisiana. One week later Mildred found the divorce decree in Alex's car. She promptly consulted with James Gravel, a lawyer in Alexandria, Louisiana, who thought that the Arkansas divorce decree was "null and void." Mr. Gravel then filed for and obtained, in Louisiana, a decree of separation from bed and board on Mildred's behalf. Alex paid child support under the terms of this decree, albeit sporadically. He and Mildred never lived together again.

In 1982, Alex met Elizabeth Zagatta. On February 15, 1984, they had a daughter, and they married on May 17, 1984. Elizabeth testified that Alex had shown her his divorce decree prior to the marriage.

On May 10, 1987, Alex died. Elizabeth applied for, and began receiving, veteran's benefits. In August 1987, Mildred filed for veteran's benefits. Her claim was eventually denied. On April 3, 1989, Mildred filed a motion to set aside the Union County Chancery decree of divorce, without notice to Elizabeth. On May 24, 1989, the Union County Chancery Court entered an order holding that the decree was void for lack of jurisdiction. On November 18, 1991, Elizabeth filed a motion to intervene and to set aside the order setting aside the decree. After a hearing the chancellor denied the motion, and Elizabeth appeals. The sole question is whether the chancellor erred in not finding that Mildred's claim was barred by the doctrine of laches.

The doctrine of laches is founded on the equitable maxims of "he who seeks equity must do equity" and "equity aids the vigilant." *Grimes* v. *Carroll*, 217 Ark. 210, 229 S.W.2d 668 (1950). In the application of the doctrine, each case must depend upon its own particular circumstances. *Grimes, supra.* The issue of laches is one of fact. *See Davenport* v. *Pack*, 35 Ark. App. 40, 812 S.W.2d 487 (1991). We will not reverse the

trial court's decision on a question of fact unless it is clearly erroneous. Ark. R. Civ. P. 52(a); *Mobley* v. *Harmon*, 313 Ark. 361, 854 S.W.2d 348 (1993).

In the case at bar it is undisputed that Mildred was not aware of Alex's purported remarriage to Elizabeth until after his death. The contention, however, is that Mildred should have taken action to set aside the Arkansas divorce decree within a reasonable time of her discovery of it in 1965. Unquestionably, Mildred took prompt action upon her discovery of the divorce decree. She consulted local counsel, filed an action for legal separation, and sent the Union County Chancery Clerk a letter stating that Alex had not been a resident of Arkansas and that she had had no notice of the proceedings. It is by no means clear that the Louisiana attorney's advice was in error. When service of process is invalid, judgments obtained thereby have been said to be void. *See Wilburn* v. *Keenan Companies, Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989); *Edmonson* v. *Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978); *Davis* v. *Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972); *Black* v. *Merritt*, 37 Ark. App. 5, 822 S.W.2d 853 (1992). Actual knowledge of proceedings does not validate defective service of process. *Green* v. *Yarbrough*, 299 Ark. 175, 771 S.W.2d 760 (1989). In *Murphy* v. *Murphy*, 200 Ark. 458, 140 S.W.2d 416 (1940), the supreme court said:

> Here, the naked truth is that a man who never, even for ninety days, became a resident of this state, gave an improper address, which made it impossible to notify his wife that she had been sued, and she remained in ignorance of that fact until after she had been divorced. Such divorces have a "mail-order" appearance, and we shall not hesitate to set them aside, even though the divorced party shall have remarried before we have that opportunity; and, however innocent the second wife may be, we cannot permit such frauds to be practiced upon the courts of this state.

In support of her position, Elizabeth cites *Sariego* v. *Sariego*, 231 Ark. 35, 328 S.W.2d 136 (1959); *Allsup* v. *Allsup*, 199 Ark. 130, 132 S.W.2d 813 (1939); *Corney* v. *Corney*, 97 Ark. 117, 133 S.W. 813 (1910); *Fair* v. *Fair*, 232 Ark. 800, 341 S.W.2d 22 (1960); and *Maples* v. *Maples*, 187 Ark. 127, 58 S.W.2d 930 (1933). Each case lends support to her position, but the most

compelling is *Maples*, which is markedly similar to the case at bar. *Maples* was an adversary proceeding between Emma Lou Maples and Bertha Maples, both of whom claimed to be the widow of B.F. Maples. The issue was which woman was entitled to veteran's benefits. In 1917, B.F. Maples obtained a decree of divorce in Pulaski County Chancery Court from Emma Lou after the issuance of a warning order. It was undisputed that B.F. was a resident of Alabama and that his representation that he was a resident of Arkansas was false. Ten days after he obtained the divorce decree, B.F. married Bertha in Tennessee and soon a child was born. B.F. and Bertha then returned to the community in Alabama where his first wife still resided.

In 1918 B.F. Maples died and in 1924 Bertha began receiving veteran's benefits. In 1931 Emma Lou filed suit in Pulaski County Chancery Court to set aside the decree of divorce. In reversing the chancellor's decision the supreme court said:

> Here, the first wife, having been advised that her husband had married another woman in 1917, waited until after her husband was dead and until 1931 before proceeding to have the divorce decree vacated. We feel constrained to hold that she waited too long, and is barred by her laches.

The differences between *Maples* and the case at bar are significant. The first Mrs. Maples had known of her husband's remarriage and the birth of a child by that marriage since 1918 and took no action until 1931. Mildred Self was not aware of Alex's remarriage until after his death in 1987. While Emma Lou Maples took no action at all, Mildred Self promptly filed suit in Louisiana for separation from bed and board. Alex's payment of child support pursuant to the Louisiana decree was an indication that even he regarded the Arkansas divorce as invalid. Finally, there is no indication from the supreme court's decision in *Maples* that the first Mrs. Maples received no notice of the pendency of the Arkansas divorce proceeding.

Our conclusion is that the chancellor's decision on the question of laches was not clearly erroneous.

Affirmed.

ROBBINS, MAYFIELD, JJ., and WRIGHT, S.J., dissent.

PITTMAN, J., not participating.

JOHN B. ROBBINS, Judge, dissenting. I respectfully dissent from the decision of the prevailing opinion of this court which holds that Mildred Self's twenty-four year delay in seeking to set aside her husband's 1965 decree of divorce does not give rise to the defense of laches. I believe the chancellor's decision, which the prevailing opinion of this court affirms, is clearly erroneous.

I think it important to recognize that we are not required to decide whether the 1965 divorce decree should have been entered. Clearly it should not. The issue is whether Mildred Self should be barred by laches for having waited twenty-four years before seeking to have the divorce decree set aside. The adversaries are not Mildred and Alex Self, but Mildred and Elizabeth. One of these women, depending upon our decision, will suffer adverse consequences. If the chancellor's decision is reversed, Mildred will not be entitled to receive VA widow's benefits. If the chancellor's decision is affirmed, Elizabeth will not be entitled to receive VA widow's benefits and her child may very well become illegitimate under applicable Louisiana law. As between these women, which one has caused, or is at least more culpable in bringing about, this situation?

The prevailing opinion cites several cases on which the appellant, Elizabeth, relies. The most striking parallel to this case, however, is found in *Maples* v. *Maples*, 187 Ark. 127, 58 S.W.2d 930 (1933), and should be the controlling precedent. Rarely does a precedent bear the similarities of fact and procedural posture as Maples does to the case at bar. The following columns show the comparison:

| Maples | Self |
|---|---|
| Maples, a nonresident, obtains an Arkansas divorce on service by publication of a warning order and upon false representations to an Arkansas court that he was a resident of Arkansas and that his wife had deserted him. | Self, a nonresident, obtains an Arkansas divorce on service by publication of a warning order and upon false representations to an Arkansas court that he was a resident of Arkansas. |

| | |
|---|---|
| Maples' first wife learns of the divorce.[1] | Self's first wife learns of the divorce decree within a week of its entry. |
| Maples remarries. | Self remarries. |
| Maples dies and his widow becomes entitled to VA benefits. | Self dies and his widow becomes entitled to VA benefits. |
| Maples' second wife begins receiving VA benefits. | Self's second wife begins receiving VA benefits. |
| Fourteen years after the divorce decree was entered, the first wife brings an action to set it aside. | Twenty-four years after the divorce decree was entered, the first wife brings an action to set it aside. |
| In an ex parte proceeding the chancellor sets the decree of divorce aside. | In an ex parte proceeding the chancellor sets the decree of divorce aside. |
| Maples' second wife intervenes and seeks to set aside the prior order which set aside the decree of divorce. | Self's second wife intervenes and seeks to set aside the prior order which set aside the decree of divorce. |
| An adversarial proceeding is held with first and second wives appearing. | An adversarial proceeding is held with first and second wives appearing. |
| The chancellor refuses to set aside the prior order which set aside the decree of divorce. | The chancellor refuses to set aside the prior order which set aside the decree of divorce. |
| Maples' second wife appeals. | Self's second wife appeals. |
| The supreme court reverses. | |

---

[1]This is the only fact listed which is implied rather than explicit. The *Maples* opinion does not disclose when the first wife learned of the fraudulent divorce, only that she learned of Maples' marriage to the second wife soon after the marriage, which occurred in the same year as the divorce. It is most unlikely, however, that the supreme court would have found that she was barred by laches to attack the fraudulent divorce decree unless she knew about the decree.

In *Maples* the supreme court cited its earlier case of *Corney* v. *Corney*, 97 Ark. 117, 113 S.W. 813 (1910), and repeated a quotation in that opinion from Bishop on Marriage and Divorce (vol. 2, § 1533) as follows:

> There are excellent reasons why judgments and matrimonial causes, whether of nullity, dissolution or separation, should be more stable, certainly not less, than in others, and so our courts hold. The matrimonial status of the parties draws with it and after it so many collateral rights and interests of third persons that uncertainty and fluctuation in it would be greatly detrimental to the public. And, particularly to an innocent person who has contracted a marriage on faith of the decree of the court, the calamity of having it reversed and the marriage made void is passed estimation. These considerations have great weight with the courts, added whereto there are statutes in some of the States according a special inviolability to such judgments.

The supreme court concluded by holding that because the first wife waited fourteen years before bringing her action to have the divorce decree vacated, she had waited too long and was barred by her laches.

The prevailing opinion attempts to distinguish *Maples* from the instant case by pointing out that in *Maples* the first wife knew of her husband's remarriage in 1918 and took no action until 1931, while here the first wife did not learn of her husband's remarriage until his death. This, however, is a point without relevance. Maples' remarriage was merely a consequence of the fraudulent divorce. It must have been her knowledge of the fraudulent decree and failure to act within a reasonable time that gave rise to laches. Alex Self's first wife admitted that she learned of the divorce decree within a week of its entry. Yet she delayed for twenty-four years before bringing this action to set it aside.

The prevailing opinion also suggests that Alex's payment of child support pursuant to the Louisiana decree was an indication that even he regarded the Arkansas divorce as invalid. However, Alex's opinion of the validity of the divorce decree has no relevance to whether laches applies to Mildred's cause of action, but even if it did, Alex's payment of child support may have resulted

from his recognition of a moral obligation to support his children who were residing with his first wife, whether or not the Louisiana court order so required, rather than from an opinion that the Arkansas divorce was invalid. Furthermore, even if Alex believed the decree of divorce was invalid, he utilized the decree by displaying it to his second wife, Elizabeth, before she married him. Elizabeth is the party raising the defense of laches, not Alex.

The consequences which may result upon the voiding of a decree of divorce are multiplied and magnified with the passage of time. Laches is particularly appropriate in this setting to avoid the inevitable harm to new family units and the difficulty in sorting out the property interests of the parties, especially those of the members of the new family unit. Delays of even six months, or two years, after a divorce has been granted before bringing an action to set aside the decree have been held sufficient to raise the bar of laches where one of the parties has remarried. *Sariego* v. *Sariego*, 231 Ark. 35, 328 S.W.2d 136 (1959); *Corney* v. *Corney*, 97 Ark. 117, 133 S.W. 813 (1910).

The additional fact, mentioned in the prevailing opinion, that Mildred sought the advice of an attorney upon learning about the divorce decree is of no consequence. A client is bound by the inaction and inattention of her attorney. *Beth* v. *Harris*, 208 Ark. 903, 188 S.W.2d 119 (1945). Furthermore, Mildred chose this attorney, Elizabeth did not. Elizabeth had no reason to know that she needed to consult an attorney prior to marrying Alex, for she had seen the decree of divorce which appeared perfectly valid in form.

As noted in the prevailing opinion, the doctrine of laches is founded on equitable maxims of "he who seeks equity must do equity" and "equity aids the vigilant." *Grimes* v. *Carroll*, 217 Ark. 2, 210, 229 S.W.2d 668 (1950). I believe the chancellor's decision to render aid to Mildred violates these maxims and is clearly erroneous. I would reverse.

MAYFIELD, J., and WRIGHT, S.J., join in this dissent.