FAIR *v.* FAIR.

5-2191                                                341 S. W. 2d 22

Opinion delivered November 28, 1960.

[Rehearing denied January 9, 1961.]

*Edward J. Rubens* and *Davis & Davis*, Memphis, Tenn.; for appellant.

*Arthur L. Smith, Jr.* and *Samuel J. Weintraub*, Memphis, Tenn.; for appellee.

J. SEABORN HOLT, Associate Justice. This is an action in which appellee, Nancy Fair, seeks to set aside a divorce decree on the ground of fraud in the procurement of said divorce. The record reflects that Mark L. Fair (deceased) and Nancy Fair (appellee) were married in 1938 and separated in March 1944. The last time that Mr. and Mrs. Fair communicated directly with each other was sometime around Easter 1946. During August, 1950, Mr. Fair filed suit in Crittenden County, Arkansas, for divorce alleging that he and his wife had lived apart three years without cohabitation and prayed that he be granted a divorce. On October 16, 1950 he was granted a decree of divorce from Mrs. Nancy Fair. On June 19, 1958 Mr. Fair died and Mrs. Fair, appellee, was notified of his death on June 21, 1958. Shortly thereafter, while checking on a burial policy of Mr. Fair's and in talking to the manager of the Thompson Brothers Funeral Home, it appears that Mrs. Fair was first apprised of the fact that her husband had procured a divorce. This was confirmed on August 8, 1958 when a certified copy of the

divorce decree was procured from the court records of Crittenden County, Arkansas. Mrs. Fair filed the present suit to set aside the above decree of divorce primarily on the ground that fraud was used in the procurement of it and that she was never notified of the filing or pending of said divorce suit. On a trial the lower court, after hearing all the testimony, set aside the divorce decree and the administrator of Mr. Fair's estate, Norman Brooks Fair, has appealed relying on the following points for reversal: (1) Fraud was not proved, (2) Mrs. Fair is guilty of laches, and (3) the trial court was without jurisdiction to hear the case. We have reached the conclusion that the decree should be affirmed on the ground that appellee's proof shows that the decree of divorce in favor of Mr. Fair was fraudulently procured during his lifetime.

I

The appellee, in charging Fair with fraud in the procurement of the divorce, asserts that he supplied his attorney and the attorney *ad litem* with an improper address as the place of Mrs. Fair's residence, with the result that she received no notice whatever of the pendency of the divorce proceeding. This charge, if supported by the weight of the evidence, constitutes such a fraud as to justify the court in setting aside the decree. *Murphy* v. *Murphy,* 200 Ark. 458, 140 S. W. 2d 416; *Lewis* v. *Lewis,* 214 Ark. 454, 217 S. W. 2d 346. In the *Murphy* case, upon essentially similar facts, we said: "Another fraud more subtle and, therefore, more egregious was his action in giving an improper address as the place of his wife's residence. This prevented her from knowing that she had been sued until after she had been divorced. Such frauds will not be tolerated."

Fair, in filing suit for divorce in Crittenden County, gave two possible addresses for his wife, both of which were insufficient and resulted in the letters of the attorney *ad litem* being returned to him by the postal authorities. The first address given was 171 Merton Street, Memphis, Tennessee. The proof shows that Mrs. Fair

had never lived at this address. Mr. Fair, however, was familiar with the property, as he had formerly owned it. At the time of the divorce case a Mr. and Mrs. Richter were living at 171 Merton Street. Mrs. Richter was a sister of Fair's daughter-in-law, and Mr. Richter was one of the two corroborating witnesses who testified for Fair in the divorce case. In the present proceeding Richter testified that in 1950 he knew that Fair was getting a divorce and that when the letter for Mrs. Fair arrived he turned it back and "just put on there she didn't live there." Thus there are strong reasons for concluding that Fair well knew that a letter sent to 171 Merton Street would never reach his wife.

The second address given was General Delivery, Vicksburg, Mississippi. Mrs. Fair had lived in Vicksburg as a girl and in 1950 still had a post-office box there, in her maiden name, which was used by her mother and other members of her family. Fair had often visited in the family home and undoubtedly knew the address of his mother-in-law there. That the address given was insufficient is of course established by the fact that the letter was returned. Just as in the *Lewis* case, *supra,* the fact that Fair made no effort to reach his wife through her mother strongly indicates a lack of good faith on his part. There is also the additional fact that Mrs. Fair was working in a bowling alley in Memphis, just across the river from Crittenden County, that Fair had visited her at the bowling alley on two or more occasions, and that he could easily have used that address to notify her of the divorce case. Hence the weight of the evidence shows clearly, indeed almost conclusively, that Fair practiced a fraud in obtaining the divorce decree.

## II

We cannot agree with the contention that the appellee was guilty of laches in not filing the present complaint until April, 1959. Fair's fraudulent conduct prevented her from knowing about the divorce case when she was sued, and she did not learn of the decree until after Fair's

death in June, 1958. There was no lack of diligence on her part, nor was the appellant adversely affected by the delay of a few months between the appellee's discovery of the divorce decree and the institution of this proceeding to set it aside.

The appellant also argues that the complaint to set aside the decree is defective in failing to allege a meritorious defense to the original action. Ark. Stats., Anno. (1947) § 29-508; *Wims* v. *Wims*, 214 Ark. 811, 218 S. W. 2d 85. This contention we hold to be without merit. Fair obtained the divorce on the ground of three years separation, and it was impossible for the appellee to assert a meritorious defense to the cause of action for divorce, as she admits the fact of three years separation. Hence, under the statute, Fair had a right to a divorce. Ark. Stats., Anno. (1947) § 34-1202. But the statute says that the question of who is the injured party shall be considered in the settlement of property rights and alimony. Upon that point the appellee's complaint does assert a meritorious defense, by alleging that the parties lived together until December 6, 1945, "when the said Mark Lee Fair deserted her (the appellee)." The complaint therefore asserts the only defense that could be asserted—that the appellee was the injured party.

## III

The appellant's third contention, that the court was without jurisdiction, is based upon the argument that nothing would be accomplished by setting aside the divorce decree now that Fair is dead, since his death freed the appellee from the bonds of marriage. But, as stated in the headnote to *Jackson* v. *Bowman*, 226 Ark. 753, 294 S. W. 2d 344: "Chancery courts have the power to set aside a default decree of divorce, even after the death of one of the parties, if property interests of the survivor are affected." In this case it appears that Fair left a substantial estate, situated in Florida, and the vacation of the Arkansas divorce decree is evidently a necessary

step to enable the appellee to assert her rights as Fair's widow.

Finding no error, the decree is affirmed.

McFADDIN, WARD, and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting.

The majority opinion in this case is most unfortunate because it sets aside a divorce decree granted by a Court of competent jurisdiction and which has been of record for ten years; and all this in spite of the fact that the movant has made no showing of a meritorious defense to the divorce action.

Mr. Fair obtained a divorce decree in Crittenden County on October 16, 1950. Mrs. Fair filed the present proceeding on April 9, 1959 to set aside the 1950 divorce decree. She made two claims: (a) Mr. Fair was not a *bona fide* resident of Crittenden County when he obtained the divorce decree; and (b) Mr. Fair fraudulently concealed from her the pendency of the divorce proceedings by failing to give her best known address to the Court's attorney ad litem.[1]

Now let us take up these two attacks made by Mrs. Fair on the 1950 divorce decree.

A. *Mr. Fair's Residence.* The Trial Court in the present case found that the 1950 Chancery Court was without jurisdiction because Mr. Fair was not a *bona fide* resident of Crittenden County in 1950. In my opinion, the Trial Court in the present case was in error in so holding; and the majority of this Court does not rest the affirmance on that finding. The depositions in the 1950 divorce case are in the record before us; and these depositions disclose the following questions were asked Mr. Fair when his deposition was taken on the 13th of October, 1950:

''Q. Please state your name, age, and place of residence.

---

[1] There is not the slightest indication that either Mr. Fair's attorney in the divorce action or the attorney ad litem was guilty of any impropriety of any kind or guilty of any conduct unbecoming a lawyer.

A. Mark A. Fair, lawful age, West Memphis, Ark.

Q. How long have you lived in West Memphis?

A. Since June 19, 1950. . .

Q. At the time you commenced your residence in West Memphis, was it your intention to reside here permanently or indefinitely?

A. It was.

Q. Is that now your intention?

A. It is. . . ."

Mrs. Ben Melson was one of the witnesses whose deposition was also taken on October 13, 1950; and she testified as to Mr. Fair's residence as follows:

"Q. Do you know the Plaintiff in this case, Mark L. Fair?

A. Yes, I have known Mr. Fair since June 19, 1950, when he rented a room at my hotel here in West Memphis.

Q. Where does he now reside?

A. In West Memphis."

Thus, the question of Mr. Fair's residence was before the Court in 1950; and in the decree the Chancellor, Hon. Francis Cherry, made this specific finding:

"That the Plaintiff is now and has been for more than three months a resident of Crittenden County, Arkansas; . . ."

In *Jamieson* v. *Jamieson*, 223 Ark. 845, 268 S. W. 2d 881, a contention was made that the person obtaining the divorce was not a *bona fide* resident[2] at the time the decree was granted; and in denying the claim in that case we said:

---

[2] At the time the Fair divorce decree was granted in 1950, the case of *Cassen* v. *Cassen*, 211 Ark. 582, 201 S. W. 2d 585, was the law; and *bona fide* residence (*i.e.*, domicile) was the requirement. Later, the Legislature by Act 36 of 1957 eliminated the *bona fide* residence (domicile) requirement; and the Legislative enactment was sustained in *Wheat* v. *Wheat*, 229 Ark. 842, 318 S. W. 2d 793. But Mr. Fair's testimony in the 1950 divorce case met the requirements of the Cassen case.

" 'The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed.' "[3]

The same rule applies here, and even stronger, because in the case at bar Mrs. Fair, in testifying before the Court in the present case in 1960, said of Mr. Fair's residence in 1950:

"Q. You allege in your complaint that Mr. Fair was a non-resident of the State of Arkansas at the time this divorce decree was granted to him?

A. Yes, sir.

Q. Now how do you know that or do you know it?

A. Well, I don't know.

Q. You don't know?

A. No."

With all this evidence before this Court, the majority, by failing to mention the matter of Mr. Fair's residence in 1950, correctly refused to rest its present holding on any claim that Mr. Fair was a non-resident of Crittenden County, Arkansas when he obtained his divorce in 1950; and that issue, therefore, passes out of this case and we come to the next attack on the 1950 divorce decree.

B. *Fraud on Mrs. Fair.* The majority is basing the affirmance of the Chancery decree on the theory that Mr. Fair fraudulently concealed from the Court and the attorney ad litem the address of Mrs. Fair. There is no showing that Mr. Fair knew any address for Mrs. Fair other than the one that he gave. The report of the attorney ad litem in the 1950 divorce case is in the record now before us, and the attorney ad litem says in part:

"That on August 19, 1950, he addressed two letters to the Defendant, Mrs. Nancy Fair, 171 Merton Street,

---

[3] To the same effect see also *Williams* v. *Williams*, 224 Ark. 949, 277 S. W. 2d 77.

Memphis, Tennessee, and Mrs. Nancy Fair, c/o General Delivery, Vicksburg, Mississippi; that both of said letters were returned marked "unclaimed."

The affidavit for warning order was duly made in the 1950 case, and the decree finds that the warning order was duly published. In the 1960 case Mrs. Fair claimed that she had a post office box in her maiden name in Vicksburg, Mississippi. The letter was sent by the attorney ad litem to the general delivery in Vicksburg, Mississippi. If Mr. Fair had wanted to conceal the divorce from Mrs. Fair, it seems that he would have given her address as some city other than Vicksburg, Mississippi, because the 1950 United States census shows that Vicksburg at that time was a city of only 27,948 population; and in 1940 the population was 24,460. Furthermore, Mr. Fair gave Mrs. Fair's Memphis address as 171 Merton Street, which was a place they had formerly owned and which was only two doors from where they had lived at one time. If he was trying to conceal the divorce suit from her, he went dangerously close to letting her know about it by giving such addresses. Mrs. Fair said that she did not know Mr. Fair's address. How could she expect him to know her address?

In *Alsupp* v. *Alsupp*, 199 Ark. 130, 132 S. W. 2d 813, the husband in obtaining a divorce had given the wife's address as Nashville, Tennessee, c/o the Sheriff's Office of Davidson County. After the divorce decree was granted, the wife brought suit to set the divorce aside on the claim that the husband had fraudulently concealed from the Court her address, and had thereby kept her from knowing of the suit. This Court held that under the facts and circumstances in that case the address given for Mrs. Alsupp was a good address. The evidence in the case at bar is just as strong to support the address given by Mr. Fair as was the address given in the Alsupp case; and so I conclude that the Court was in error in holding that Mrs. Fair established that Mr. Fair fraudulently concealed her address.

There is another reason for my dissent, and that is the failure of Mrs. Fair in her present suit to allege a

meritorious defense to the divorce case or to claim that she was the injured party. In *Alsupp* v. *Alsupp, supra,* we said it was essential that a person seeking to set aside a divorce allege facts sufficient to show a meritorious defense. That has been our rule in Arkansas. In the present case, the majority says that Mrs. Fair could not allege a meritorious defense because they had been separated for more than three years without cohabitation, which is the seventh ground for divorce under § 34-1202, Ark. Stats. I earnestly submit that the burden was on Mrs. Fair to show that she was the injured party in this suit in which she is seeking to set aside the divorce so that she can get some property rights. She is not interested in the divorce now for the purpose of settling her marital status, because Mr. Fair is dead. She is interested in setting aside the divorce only in order to get property rights. In failing to claim that she was the injured party, she has lost her chance to claim property rights. Secton 34-1202, Ark. Stats. in the seventh ground for divorce, says, "... and the question of who is the injured party shall be considered only in cases wherein by the pleadings the wife seeks either alimony under Section 34-1211, Arkansas Statutes 1947, or a division of property under Section 34-1214, Arkansas Statutes 1947, as hereby amended, or both."

In her present complaint to set aside the divorce decree, Mrs. Fair has this as her prayer:

"WHEREFORE, the Plaintiff prays that the Decree of Divorce granted to the said Mark Lee Fair by this Court be set aside, vacated, and declared null and void ab initio inasmuch as the Court proceeded without jurisdiction in granting said Decree because of fraud practiced by the said Mark Lee Fair upon the Plaintiff and upon the Court and that the Court grant to the Plaintiff the recovery of her costs in this action and all other proper legal and equitable relief."

She failed to pray for property rights and I think that such failure is fatal to her case.

There is also the matter of laches, which I think is a bar to Mrs. Fair. Mrs. Fair testified that she went to

Vicksburg to stay with her mother in 1942 or 1943 and that she and Mr. Fair never lived together thereafter. She saw him when he came to the bowling alley, but she made no effort to keep in touch with him. From 1943 to 1959 Mrs. Fair went her way and left Mr. Fair to go his way. I think a wife who goes off and leaves her husband for fifteen years is in poor grace to claim that she can pick him up when she gets ready. Husbands are not like chattels that can be thrown down and left until the owner is ready to resume possession. When a wife goes off and leaves her husband for fifteen years I think she is guilty of laches and cannot come in after his death and seek to set aside a divorce.

PAUL WARD, Associate Justice, dissenting.

The apparent equities in favor of Mrs. Fair make me reluctant to disagree with the majority opinion, but the latent dangers inherent therein compel me to do so.

The essence of the majority opinion, as I understand it, is the finding that Mark Fair defrauded the court in procuring the original divorce decree in that ''he supplied his attorney and the attorney *ad litem* with an improper address as to the place of Mrs. Fair's residence.'' This being true the majority of course must be first convinced that Mr. Fair knew her correct address.

The decisive question therefore is: Does the evidence show (conclusively) that Mr. Fair deliberately supplied an improper address?

As I see it, the defect in the majority opinion is that it fails to point out that Mr. Fair knew Mrs. Fair's address. I am aware of nothing in the record to show that he had such knowledge. If this is true any other conclusions reached by the majority must necessarily rest on conjecture and inferences. Such being the situation the *Murphy* case and the *Lewis* case, relied on so heavily by the majority, lose all convincing application. From the *Murphy* case we quote: ''Thereafter the parties lived separate and apart in the City of St. Louis, but each knew the other's address.'' Again in that same case the court

stated: "It is admitted that plaintiff furnished this address, and it is admitted also that he knew this was not the address of his wife." From the *Lewis* case we quote: "When we consider that appellee was familiar with Missoula and knew the address of his wife's parents, with whom she was actually living. . ." In the case under consideration we have nothing approaching that degree of certainty or knowledge on the part of Mr. Fair. Concededly it appears unlikely that Mr. Fair did not know his wife's whereabouts since they both lived at times in the same state and city, but appellee's own testimony proved conclusively that it could happen. Certainly Mr. Fair, who apparently was a substantial business man, was better known and easier to be found than was his wife, yet she admits that she could not locate Mr. Fair even though she made a determined effort to do so. Why then should this court assume that Mr. Fair was acting in bad faith and fraudulently when he supplied the two addresses mentioned by the majority. Why should we not assume that he supplied the best address available to him.

A solemn judgment of a court of record is the foundation upon which rest important property rights and intimate personal relationships, and courts should act cautiously before sweeping it away, particularly after a lapse of 10 years. The trial judge who rendered the original divorce decree in 1950 had much better opportunity to inquire into the matter of service than this court has at this late date. In that court decree the judge stated that he had given "careful consideration to plaintiff's complaint in equity, proof of publication of warning order and the report of the attorney *ad litem*." It is not questioned that Mr. Fair complied with all the provisions of the statute in securing proper service by warning order.

In the beginning I mentioned the "latent dangers inherent" in the majority opinion, and I believe they are real. Theoretically and actually it jeopardizes the happiness of thousands of homes and the ownership of untold millions of dollars in personal and real property where they have been established on this kind of service. The stability of such values should not rest upon what some

court determines to be the state of mind of a litigant 10 years previously—that is, did he act honestly or fraudulently. As was said by this court many years ago in a similar situation in the case of *Boynton* v. *Ashabranner,* 75 Ark. 415, 88 S. W. 566, 88 S. W. 1011, 91 S. W. 20; "Any other view of the law would permit the retrial of the question whenever either party sees fit to tender the issue anew, and the final adjudications of the courts of competent jurisdiction would rest upon a slender thread."