Elizabeth Z. SELF *v.* Mildred SELF

94-793                                    893 S.W.2d 775

Supreme Court of Arkansas
Opinion delivered February 27, 1995

*Ben Seay*, for appellant.

*Ronald L. Griggs*, for appellee.

ROBERT H. DUDLEY, Justice. This case involves a dispute between Mildred Self and Elizabeth Self, both wives of Alex Self, now deceased, over which one is entitled to receive widow's benefits from the Veterans Administration. The chancellor decided in favor of Mildred. Elizabeth appealed to the court of appeals. The court of appeals, by a tie vote, affirmed *en banc. Self* v. *Self,* 46 Ark. App. 250, 878 S.W.2d 436 (1994). Elizabeth filed a petition for review in this court. We granted certiorari because of the tie vote. *See* Sup. Ct. R. 1-2(f). Upon review, we reverse.

There is no dispute about the facts. Alex and Mildred Self were married in 1947 and eventually had four children. Alex was in military service and moved from base to base. In 1964, Alex returned to the United States from Tripoli, Libya, and the couple moved to a home they owned in Pineville, Louisiana. Mildred

and the children remained in Pineville while Alex was stationed at an Air Force base in Clinton, Oklahoma.

On September 1, 1965, Alex filed a complaint for divorce in Union County, Arkansas. He alleged that he had been a resident of the State of Arkansas for more than ninety days and that Mildred's last known address was Alexander City, Alabama. A warning order was issued, and an attorney at litem wrote Mildred at an address in Alexander City. The letter was returned and marked "undeliverable." It is undisputed that Alex was not a resident of Arkansas for the time required by law for a divorce, that Mildred was not a resident of Alexander City, Alabama, and that Mildred received no notice of the proceedings in Union County. On October 8, 1965, Alex obtained a decree of divorce in Union County.

A week later Alex was in Pineville, Louisiana, and Mildred saw the divorce decree in the glove pocket of Alex's car. It was the first notice she had of the divorce. She promptly consulted with James Gravels, a lawyer in Alexandria, Louisiana. As a result of that conference she subsequently filed a petition in Louisiana for a separation from bed and board. The Louisiana court granted the separation and ordered Alex to pay child support, which he sporadically paid. Gravels's recollection of the events at the conference with Mildred are abstracted, in the pertinent part, as follows:

> I reviewed the divorce decree and I remember discussing with her whether we could set aside the Arkansas divorce. She had told me that her husband had lived with her through the entire period of time when the divorce was obtained. I knew you had to establish some sort of residency to have jurisdiction. I probably told her and the only reason that I got a separation for her was that I did not think the Arkansas divorce was any good and *it could be attacked at any time.*

> When Mrs. Self showed me the Arkansas divorce, I advised her that it was *voidable.* I took action on her behalf in Louisiana by filing a separation action. . . .

> Mrs. Self did not follow through with the divorce proceeding with me. She would not have been eligible for a

divorce at that time. Whether she could have gotten a divorce a year or six months after the rendering of this judgment, I do not know. I did not get her a divorce. As far I know, this is the last legal action she took against Mr. Self.

When Mrs. Self left my office, it was my belief she understood that she wasn't divorced, as far as I was concerned. *Her documents could be attacked by anyone by interested parties and set aside.*

. . .

I did not recommend she contact an attorney in Arkansas to do something about that divorce decree. I did not think anybody would give it full faith and credit. [Emphasis added.]

To prevent a misunderstanding, we note that the prevailing opinion of the court of appeals states that Gravels told Mildred the decree was "null and void," but this opinion does not so state. The comment quoted by the court of appeals's majority opinion was made by Gravels in a letter he wrote to the Veterans Administration on September 8, 1987, but that was more than twenty years later. *See Self,* 46 Ark. App. at 252, 878 S.W.2d at 437.

After the conference with Gravels, Mildred did not formally attack the decree either directly or collaterally. She wrote the clerk of the court that her husband had lived in Arkansas for thirty days, but that she was never notified of the action. In short, she left the facially valid decree entered of record.

In 1982, Alex met Elizabeth Zagarra. Alex told Elizabeth he was divorced and showed her the divorce decree. On February 15, 1984, they had a daughter, and on May 17, 1984, they were married. They continued to live together until May 10, 1987, when Alex died. Soon after Alex's death, Elizabeth applied for and began receiving widow's benefits from the Veterans Administration. A little later, in August 1987, Mildred applied for the same widow's benefits. Her claim was denied, primarily because of the decree of divorce. It was at this time that Gravels wrote his letter to the Veterans Administration advising them that the decree was "null and void."

On April 3, 1989, Mildred filed a motion to set aside the divorce decree that had been entered in 1965, twenty-four years earlier. Mildred did not give Elizabeth notice of the motion. On May 24, 1989, the chancery court entered an order setting aside the decree for lack of jurisdiction. This action made Mildred the widow of Alex, and, consequently, she was entitled to receive the widow's benefits. On November 18, 1991, Elizabeth filed a motion to intervene and asked the chancellor to vacate the order setting aside the decree of divorce because of laches. The chancellor denied Elizabeth's motion, and she appealed. Upon review, we reverse.

The issue in this case is not whether the decree of divorce should have been granted. It should not have been granted, but it was. Consequently, we now have this contest between the two victims. The only issue is which of the two victims should prevail. It is an equitable issue and, in part, is determined by which victim is the more innocent. The exact equitable issue is whether the chancellor erred in refusing to apply the doctrine of laches after Mildred waited twenty-four years to file her action to set aside the divorce.

■ The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Andarko Petroleum* v. *Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *Briarwood Apartments* v. *Lieblong*, 12 Ark. App. 94, 671 S.W.2d 207 (1984).

■ The doctrine of laches has been applied in numerous cases where one party has obtained an invalid divorce and remarried, but the first spouse then waits too long under the facts of the particular case to assert her right to have the void judgment vacated. *See Fair* v. *Fair*, 232 Ark. 800, 341 S.W.2d 22 (1960); *Sariego* v. *Sariego*, 231 Ark. 35, 328 S.W.2d 136 (1959); *Allsup* v. *Allsup*, 199 Ark. 130, 132 S.W.2d 813 (1939); *Maples* v. *Maples*,

187 Ark. 127, 58 S.W.2d 930 (1933); *Corney* v. *Corney*, 97 Ark. 117, 133 S.W. 813 (1910). We have stated that judgments in matrimonial cases should be more stable than in others, because matrimonial status draws with it so many collateral rights and interests of third persons. *Maples*, 187 Ark. at 130-31, 58 S.W.2d at 932. However, we have also held that when divorces have a "mail-order" appearance, we shall not hesitate to set them aside, even though the divorced party remarries in the meantime, as we cannot permit such frauds to be practiced upon the courts of this state. *Murphy* v. *Murphy*, 200 Ark. 458, 462-63, 140 S.W.2d 416, 419 (1940).

██ In this case, Mildred allowed the voidable decree to remain in effect for twenty-four years, even though her attorney, James Gravels, told her it could be set aside. Our general rule is that a party who has knowledge of a judgment against himself or herself is required to exercise reasonable diligence in seeking to have it set aside, and an unexcused delay can justify a court in refusing to grant relief prayed for. *O'Neal* v. *B.F. Goodrich Rubber Co.*, 204 Ark. 371, 162 S.W.2d 52 (1942). The attorney's testimony established that he knew that the decree was voidable and that he communicated that fact, but neither he nor Mildred took action. We need not determine whether that was Gravels's or Mildred's fault. If the fault were Mildred's, she failed to act with diligence, and if the fault were her attorney's, it was imputable to her. An attorney's acts of omission, as well as his commissions, are to be regarded as the acts of the client he represents, and the negligent acts of the attorney are equivalent to the negligence of the client himself. *Springdale Memorial Hospital* v. *Director of Labor*, 34 Ark. App. 266, 809 S.W.2d 828 (1991) (citing *Peterson* v. *Worthen Bank & Trust Co.*, 296 Ark. 201, 753 S.W.2d 278 (1988)). In the absence of fraud, the client is bound, according to the ordinary rules of agency, by the acts, omissions, or neglect, of the attorney within the scope of his authority. *Id.; see also Riley* v. *Vest*, 235 Ark. 193, 357 S.W.2d 497 (1962); *Beth* v. *Harris*, 208 Ark. 903, 188 S.W.2d 119 (1945). This includes such things as negligent failure to file proper pleadings. *See Allen* v. *Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987); *DeClerk* v. *Tribble*, 276 Ark. 316, 637 S.W.2d 526 (1986).

██ The trial court was persuaded by Mildred's statement that she did not know that Alex had remarried until after he died

in 1987. However, that statement does not diminish the fact that Mildred is the one that left the voidable decree in effect. Further, it was undisputed that Mildred knew that Elizabeth and Alex lived together, and she knew they had a child; therefore, she should have been on notice that Alex might have been married to Elizabeth. When the issue is laches, a party is chargeable with such knowledge as might have been obtained upon reasonable inquiry, provided the facts as known to him were such as to put the duty of inquiry upon a person of reasonable intelligence. *Pope* v. *Pennzoil Producing Co.*, 288 Ark. 10, 701 S.W.2d 366 (1988); *Mitchell* v. *Hammons*, 31 Ark. App. 180, 792 S.W.2d 333 (1990). In addition, Mildred admitted that she knew that Alex had remarried approximately two years before she filed the motion to set aside the divorce decree. Thus, the record does not support a finding of totally innocent ignorance on the part of Mildred.

In the application of the doctrine of laches each case depends on its particular circumstances. *Grimes* v. *Carroll*, 217 Ark. 210, 229 S.W.2d 668 (1950). The issue of laches is one of fact. *See Davenport* v. *Pack*, 35 Ark. App. 40, 812 S.W.2d 487 (1991). A reviewing court does not reverse the trial court's decision on a question of fact unless it is clearly erroneous. A.R.C.P. Rule 52(a); *Mobley* v. *Harmon*, 313 Ark. 361, 854 S.W.2d 348 (1993). A finding is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *RAD-Razorback Ltd. Partnership* v. *B.G. Coney Co.*, 289 Ark. 550, 553, 713 S.W.2d 462, 464 (1986). The facts here show that Mildred learned of the decree within one week of its entry and immediately contacted an attorney who told her it was voidable, yet she delayed for twenty-four years the filing of a motion to set aside the decree. The result was that she left a voidable decree in effect for twenty-four years. In the meantime, Elizabeth relied on the facially valid decree and married Alex. Clearly, Elizabeth is the more innocent of the two victims.

Our case of *Maples* v. *Maples*, 187 Ark. 127, 58 S.W.2d 930 (1933) is squarely in point. In that case a non-resident filed suit for divorce, falsely representing that he was a resident of Arkansas and that his wife had deserted him. He was granted the decree of divorce. His wife subsequently learned of the divorce. He

remarried. He later died, and his widow, the second wife, began receiving veterans widow's benefits. Fourteen years after the decree of divorce, the first wife brought an action to set aside the divorce decree. The chancellor set aside the decree. The second wife intervened. The chancellor refused to vacate the order setting aside the decree. The second wife appealed. In reversing the ruling of the chancellor we wrote: "Here, the first wife, having been advised that her husband had married another woman in 1917, waited until after her husband was dead and until 1931 before proceeding to have the divorce decree vacated. We feel constrained to hold that she waited too long, and is barred by her laches." *Id.* at 131, 58 S.W.2d at 932.

In the case at bar, Mildred was advised within two weeks after entry of the divorce decree that it was a voidable decree, and yet she let it remain in effect for twenty-four years. Even if she did not fully understand the consequences of leaving such a decree in effect, her attorney did, but no action was taken. While Mildred testified that she did not know that Elizabeth and Alex were married until after Alex's death, she admitted that she knew that Elizabeth lived with Alex, and that they had a child. This should have put her on notice that Elizabeth might be relying on the decree. The knowledge of these facts imposed a duty of inquiry upon her, but even at that time she took no action. Finally, even if we were to disregard those facts, Mildred admitted that she became aware of Elizabeth's marriage to Alex at the time of Alex's death, but still it was nearly two more years before she filed the petition to set aside the decree. Under these circumstances we have no hesitance in holding that the chancellor erred in failing to apply the doctrine of laches to Mildred's petition.

The decree of the chancery court that vacated and set aside the decree of divorce will therefore be reversed, and the cause will be dismissed.

GLAZE, J., concurs.