

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–937

| | |
|---|---|
| REBECCA K. MCMAHEN<br>APPELLLANT | **OPINION DELIVERED:** MAY 3, 2017 |
| V. | APPEAL FROM THE POPE COUNTY CIRCUIT COURT<br>[NO. 58CV-15-063] |
| KENNETH MACK ROBINSON AND AMERICAN EXPRESS CENTURION BANK<br>APPELLEES | HONORABLE KEN D. COKER, JR., JUDGE |
| | REVERSED AND REMANDED |

## ROBERT J. GLADWIN, Judge

Rebecca McMahen appeals the August 14, 2015 order of the Pope County Circuit Court that denied her petition for declaratory judgment. In denying the petition, the trial court found that the three-year statute of limitations provided in Arkansas Code Annotated section 4-59-209 (Repl. 2011) did not apply to prevent appellee Kenneth Mack Robinson from obtaining an order to set aside the August 23, 2007 quitclaim deed that transferred certain real property to Rebecca from her husband, David McMahen. Rebecca argues that the trial court improperly applied the statute and erred in finding that David had a curtesy interest to which Robinson's judgment lien could attach. We reverse and remand.

### I. *Facts*

Rebecca filed a complaint on March 2, 2015, seeking a declaration that Arkansas Code Annotated section 4-59-209 prevented judgments against David from attaching to the

land she had acquired from him.[1] She alleged that on August 23, 2007, David quitclaimed to her certain real property located in Pope County. When he made the transaction, David was insolvent, and the property was subject to a mortgage. On April 7, 2010, American Express Centurion Bank (Centurion) obtained a judgment against David; and on October 12, 2010, Robinson was awarded a consent judgment against David, that was filed on November 1, 2010, in Pope County. Rebecca alleged in her complaint that the statute of limitations expired on August 23, 2010, on any action arising under Arkansas Code Annotated sections 4-59-201 to –213 (Arkansas Fraudulent Transfers Act). Rebecca further claimed that on June 2, 2011, David sought bankruptcy protection by filing a petition for Chapter 7 relief in the Bankruptcy Court for the Eastern District of Arkansas, and on October 20, 2011, the debts to Robinson and Centurion were discharged.[2]

Rebecca and David signed an escrow agreement on December 22, 2011, agreeing to sell the quitclaimed property at issue to Owen Jones. Subsequently, when Jones tried to sell the property, he could not acquire title insurance because of the prospect that either Robinson or Centurion might have a cause of action against David under the Arkansas

---

[1]Ark. Code Ann. § 4-59-209 provides that a cause of action with respect to a fraudulent transfer is extinguished unless action is brought within three years.

[2]Rebecca obtained a "Declaratory Order" on April 15, 2015, after Centurion was served on March 9, 2015, and failed to answer the complaint. The order states that four and one-half years had passed since the three-year period of limitations had ended under Ark. Code Ann. § 4-59-209 for anyone attacking the transfer of land she had received from David on August 23, 2007. The order states that "the Court is of the opinion that the Plaintiff may pass title to all or any part of the lands described in Paragraph 2 above to any person without threat of a successful action by the Defendant, American Express Centurion Bank, to set aside the transaction whereby Plaintiff initially acquired title to the land." This order was not appealed.

Fraudulent Transfers Act. Rebecca sought a declaration from the trial court that the time for either Robinson or Centurion to obtain an order setting aside the quitclaim deed—which would allow their judgments to attach to the land—had expired and that the judgments against her husband were not enforceable as to her or her property.

Robinson answered that the quitclaim deed lacked consideration and was void; so, the lien on the property arising from his judgment was still attached. He argued that the statute of limitations for an action on a judgment, such as a lien foreclosure, had not run. Ark. Code Ann. § 16-56-114 (Repl. 2005) (actions on all judgments and decrees shall be commenced within ten years after cause of action shall accrue). Rebecca filed a first-amended complaint alleging that Robinson did not have a judgment against any owner of the property in question. Robinson pled affirmatively that the statute of limitations cited by Rebecca was not applicable to his efforts to rescind the quitclaim deed to her, which is a remedy sounding in equity. He alleged that the quitclaim deed at issue was a fraudulent transfer and lacked consideration and was therefore void. Thus, he argued that David still had an interest in the subject property, and Robinson's lien on the property arising from the judgment was still attached.

At the hearing on Rebecca's declaratory-judgment complaint, Rebecca's counsel argued that when the three-year statute of limitations had run, Robinson's opportunity to pull that property back into David's ownership had also expired. Counsel claimed, "It did not affect the lien of the judgment, it's just that there was no property in Mr. McMahen's name to which [Robinson's] lien might attach."

3

Counsel for Robinson declared that the three-year statute of limitations did not preclude other principles of law and equity under Arkansas Code Annotated section 4-59-210 (Repl. 2011). Counsel argued that a court of equity was not bound by limitations fixed by statute if it would be inequitable or unjust to do so. Counsel pointed to Rebecca's admission that David was insolvent at the time of the transfer and that she had given no money for the property. Even though the quitclaim transaction occurred about ten years prior, counsel argued that the homestead exemption the McMahens would have enjoyed ended in 2011 when they signed the escrow agreement with Jones. Counsel argued that caselaw supports the position that a homestead is abandoned when the property is sold. Further, he claimed that the escrow agreement was not recorded, so Robinson had no reason to know about it until it was brought to his attention in 2015. Finally, counsel argued that David had a curtesy interest in his wife's property.

The trial court filed an order on August 14, 2015, finding that, despite the three-year limitation provided in Ark. Code Ann. § 4-59-209, the issue of when the time for setting aside the quitclaim transaction expired was a question of fact under the equitable doctrine of laches. The trial court stated,

> When applying the doctrine of laches to the timeliness of a rescission action, the courts must consider various factors including the circumstances, purposes, and nature of the action or inaction and the attempt to rescind a contract "must be made within a reasonable time after the facts supporting the right of rescission become known." *See* Brill, *Arkansas Law of Damages*, § 31:3, at p. 715; Ark. Code Ann. § 4-59-210.

The trial court held that it could not find that the time for obtaining an order to set aside or rescind the transaction from David to Rebecca had expired under the doctrine of laches, and it denied the declaratory-judgment petition.



Rebecca filed a motion to modify the order on August 19, 2015, and the trial court denied it by order filed September 10, 2015. A second notice of appeal was filed on September 18, 2015, and this appeal timely followed.[3]

## II. *Standard of Review*

The standard of review for an appeal from a bench trial is whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Dye v. Diamante*, 2017 Ark. 42, at 3–4, 510 S.W.3d 759, 762. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Because our inquiry involves statutory interpretation, our review is de novo. *Taylor v. City of Fort Smith*, 2014 Ark. App. 450, at 3, 441 S.W.3d 36, 39.

## III. *Application of Ark. Code Ann. §§ 4-59-209, -210*

Rebecca argues that the trial court failed to properly apply Arkansas Code Annotated section 4-59-209 to the undisputed facts of this case. We agree. Section 4-59-209 provides as follows:

> A cause of action with respect to a fraudulent transfer or obligation under this subchapter is extinguished unless action is brought:
>
> (a) under § 4-59-204(a)(1), within three (3) years after the transfer was made or the obligation was incurred;
> (b) under § 4-59-204(a)(2) or § 4-59-205(a), within three (3) years after the transfer was made or the obligation was incurred; or
> (c) under § 4-59-205(b), within one (1) year after the transfer was made or the obligation was incurred.

---

[3]This appeal arrives before us for the second time after we ordered Rebecca McMahen to file a supplemental addendum on March 15, 2017, and she complied on March 20, 2017. *See McMahen v. Robinson*, 2017 Ark. App. 169.

The parties agree that the quitclaim deed was transferred from David to Rebecca on August 23, 2007. Robinson obtained his consent judgment against David on October 12, 2010, and it was filed of record on November 1, 2010, which is more than three years after the quitclaim deed had been transferred to Rebecca. Therefore, any cause of action to rescind the quitclaim deed based on the Arkansas Fraudulent Transfers Act was extinguished after August 23, 2010.

The question of the application of Arkansas Code Annotated section 4–59–210 must be answered; section4–59–210 provides as follows:

> Unless displaced by the provisions of this subchapter, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

Citing section 4–59–210, Robinson contends that the trial court properly ruled that the theory of laches applies to his rescission claim despite section 4–59–209 and that the time for him to bring his rescission claim has not expired.

Robinson claims that David transferred his interest in the property to Rebecca for no consideration in August 2007, knowing that Robinson would soon file a lawsuit against him. David's sole reason for the conveyance was to prevent Robinson's future judgment from attaching to the real property. Robinson contends that he did not pursue rescission earlier because he could not attach his judgment lien to the property under the homestead exemption. *See* Ark. Const. art. IX, § 3. He asserts that the homestead exemption was waived when Rebecca signed an escrow agreement on December 22, 2011, with Owen Jones. *See Stone v. Bowling*, 191 Ark. 671, 87 S.W.2d 49 (1935); *Beeson v. Byars*, 187 Ark. 966, 63 S.W.2d 540 (1933). Robinson contends that because the escrow agreement was

not recorded, he could not have known that the homestead exemption had been waived until Rebecca filed her declaratory-judgment action on March 2, 2015.

Robinson cites *Self v. Self*, 319 Ark. 632, 636, 893 S.W.2d 775, 778 (1995), which states,

> The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Anadarko Petroleum v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993). It is based on the assumption that the party to whom laches is imputed has knowledge of his rights and the opportunity to assert them, that by reason of his delay some adverse party has good reason to believe those rights are worthless or have been abandoned, and that because of a change of conditions during this delay it would be unjust to the latter to permit him to assert them. *Briarwood Apartments v. Lieblong*, 12 Ark. App. 94, 671 S.W.2d 207 (1984).

Robinson contends that for laches to bar the rescission, Rebecca must, by reason of Robinson's delay, have good reason to believe that his right to rescind the fraudulent transfer was abandoned or worthless. *Self*, 319 Ark. at 636, 893 S.W.2d at 778. Robinson claims that Rebecca knew the transfer of real property by her husband was a fraudulent attempt to keep it from attaching to Robinson's judgment lien; therefore, Rebecca did not have a good reason to believe that Robinson's right was abandoned or worthless. Thus, Robinson argues that the trial court's finding that the time to bring the rescission claim had not expired is not clearly erroneous.

In *Self*, the issue was whether the chancellor had erred in failing to apply the doctrine of laches after the appellee had waited more than twenty-four years to file her action to set aside a divorce. *Id.* The supreme court held that the appellee had allowed the voidable decree to remain in effect for twenty-four years, even though her attorney had told her it could be set aside. *Id.* at 637, 893 S.W.2d at 778. The court stated,

Our general rule is that a party who has knowledge of a judgment against himself or herself is required to exercise reasonable diligence in seeking to have it set aside, and an unexcused delay can justify a court in refusing to grant relief prayed for. *O'Neal v. B.F. Goodrich Rubber Co.*, 204 Ark. 371, 162 S.W.2d 52 (1942).

*Id.*, 893 S.W.2d at 778.

In the present case, the trial court found that the issue of when the time for setting aside the quitclaim transaction expired was a question of fact under the equitable doctrine of laches. We disagree. The question whether or when Robinson knew of the quitclaim transfer is irrelevant in this circumstance because the time limitation in section 4-59-209 had run its course before Robinson obtained a judgment against David, and any claim attacking the quitclaim deed had been extinguished. Section 4-59-210 does not apply because Robinson did not obtain his judgment against David within the three-year period that the conveyance was vulnerable under section 4-59-209. Had his judgment been granted within the three-year period following the quitclaim-deed transfer to Rebecca, Rebecca could have utilized section 4-59-210 and argued that laches prevented any claim Robinson may have had after the three-year period had expired.

Because we hold that Robinson is barred from making a fraudulent-transfer claim attacking the quitclaim deed conveyed to Rebecca on August 23, 2007, we decline to address Rebecca's arguments involving curtesy.

Reversed and remanded.

GRUBER, C.J., and VAUGHT, J., agree.

*Jon R. Sanford, P.A.*, by: *Jon R. Sanford*, for appellant.

*Niswanger Law Firm PLC*, by: *Stephen B. Niswanger* and *Benjamin M. Ross*, for appellee Kenneth Mac Robinson.